h McKAY, J.
The defendants, Thomas Calegan, Wayne D. Swenson and Fun Stuff Inc., appeal the judgment of the trial court granting the plaintiffs, Louisiana Gaming Management, Inc. (LGM), motion for summary judgment and denying the defendants’ motion for summary judgment and dismissing defendants. The trial court also dismissed the defendants’ demand for commissions witheld by LGM. Defendants now appeal this judgment.
FACTS AND PROCEDURE
Louisiana Gaming Management, Inc. (LGM), filed a claim against the defendants alleging breach of exclusivity and non-competition agreements, as well a violations of the Louisiana Unfair Trade Practices Act (LUTPA). They sought damages for loss of profits, loss of business reputation, loss of business opportunities, and attorney fees. The defendants answered and simultaneously reconvened against LGM for payments of their commissions due under the contracts.
|2The contractual relationships at issue arose out of agreements executed between LGM and Thomas Calagan and Wayne Swenson respectively in August and September of 1991. These agreements authorized Mr. Calagan and Mr. Swenson to acquire as independent contractors or as in the vernacular known as “Master Associates”, locations on behalf of LGM for the placement and operation of video poker devices. Mr. Calagan and Mr. Swenson were to receive 25% of the net revenues from the operation of the devices as compensation for their efforts. They subse *161 quently assigned their rights to receive payments to Fun Stuff, which was primarily owned by Mr. Swenson. These agreements contained an exclusivity clause that provided:
Master Associate acknowledges that his services under this contract are exclusive in nature, that he will not solicit locations for devices for any other legal entity and shall in no way compete, directly or indirectly, with the activities of Corporations as long as he is entitled to receive or is receiving compensation form the Corporation under the terms of this contract.
Pursuant to the agreements the defendants solicited suitable locations for the placement of video poker machines and LGM provided the devices and necessary funding. The Master Associates continued to obtain new locations and increase the route for LGM. However, LGM apparently began experiencing difficulties in funding the locations as early as 1992. The minutes of a Master Associates’ meeting held on August 19, 1992 revealed that “there was no money left to fund any locations.” Mr. Swenson, cognizant of LGM’s funding problem, requested relief from the exclusivity clause in the 1991 agreement in a certified letter to LGM on October 12, 1992. In a November 10, 1992,- memorandum, an officer of [aLGM, Thomas Addario, modified the original exclusivity clause as to all Master Associates as follows:
If LGM is unable to confirm funding to secure a new location, the Master Associate may seek alternative funding. However, in keeping with the spirit of our relationship, LGM requests the first right of refusal to consider new locations before you offer the location to a third party. Similarly, should LGM be in the position of funding locations and the Master Associates are unable to submit locations for consideration, LGM will seek alternative sources for locations
LGM’s funding problems apparently continued in April of 1995 and the board resolved and informed the Master Associates that future purchases of new equipment would require contributions from the Master Associates. The next month the Board resolved to cease obtaining new equipment for new or existing locations obtained by Fun Stuff, unless Fun Stuff agreed to help fund the cost by accepting a reduced commission. Furthermore, the directors of the board of LGM were aware in March of 1992 that the Master Associates were placing gaming devices for LGM’s competitors. Since October of 1996, LGM has not paid commissions to Fun Stuff based on their interpretation of the original agreement as well as the November 10, 1992 memorandum that resulted in Swenson breaching the original contract twice. Nevertheless, LGM has continued to collect the revenues from Fun Stuffs entire route and the defendants allege that LGM owes them over one million dollars in unpaid commissions.
ASSIGNMENT OF ERRORS
The appellant raises three errors for consideration by this court. First appellant contends that the trial court erred in granting LGM’s motion for summary judgment in the absence of any contractual term providing for forfeiture of earned commissions. Secondly, the appellant contends that trial court erred in granting the plaintiffs’ motion for summary judgment when genuine issues of |4material fact exist as to whether the contract provided for a right of first refusal, and by relying upon parole evidence to reach this conclusion. Finally, appellant contends that the trial court erred in granting plaintiffs’ motion for summary judgment due to the existence of genuine issues of material fact as *162 to whether Mr. Swenson and Mr. Calegan breached the contract.
STANDARD OF REVIEW
In determining whether summary judgment is appropriate, appellate courts review the evidence de novo. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of actions. Two Feathers Enterprises v. First National Bank, 98-0465 (La.App.4.Cir.lO/14/98), 720 So.2d 398, 400. This procedure is now favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). This standard of review requires the appellate court to look to the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to show that there is no genuine issue as to a material fact, and that the mover is entitled to a judgment as a matter of law. La. C.C.P. art. 966(B). In order to prevail on a motion for summary judgment, the movant must show “that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of material fact” South Central Bell Telephone Co. v. Sewerage and Water Board, 95-0949 (La.5/19/95), 654 So.2d 1090. Both the evidence and all inferences drawn from the evidence must be construed in favor of any party opposing the motion, and all doubt must be resolved in his favor. Id. Taking into accounts these standards, we find that summary judgment is improper in the case sub judice.
1 sWe will address defendant’s assignment of error three because it is the crux of this appeal. The appellants allege that the trial court erred in granting the plaintiffs’ motion for summary judgment due to the evidence of genuine issues of material fact as to whether Swenson and Calegan breached the contract.
The trial court’s reasons for judgment are based upon'the June 24, 1997,[1] testimony of Mr. Wayne D. Swenson and his non-legal opinion on his interpretation of the November 10, 1992 modification of the original agreements between defendants and plaintiffs. Mr. Swenson by his limited testimony appears to agree that the plaintiffs had a right of first refusal or at least that plaintiffs requested that they be given a right of first refusal pursuant to the November modification. What is completely undeterminable from his testimony is whether any breach had occurred and what procedures were used, if any were taken, to offer specific locations to LGM. There seem to be various modes of communication concerning the alleged right of first refusal that the defendants had with LGM including FAX, letters, telephone conversations, none of which were fully determined at the hearing. Furthermore, no additional testimony was taken at the injunction hearing to clarify the issue. In fact Mr. Butler, plaintiffs attorney in his conclusion to the injunctive relief hearing stated, “They can’t get equitable injunctive relief. That’s why this case involves an entire ventilation of all of the evidence, and all of the claims.”(emphasis added) We wholeheartedly agree. The matters concerning the alleged breaches raised by all parties simply are too fact specific to be adjudicated on summary judgment. Furthermore, there are facts, which should lead to legal conclusions as to whether or *163 not the | fiaddendum/modification to the original agreement between the parties was in fact a right of first refusal or merely a request on the part of the plaintiffs. The fact that these questions even appear convinces this Court that the matter was prematurely ruled upon by the trial court prior to a full development of the facts. Therefore, there are genuine issues of material fact in question and the plaintiffs were not entitled to a summary judgment.
CONCLUSION
After a perusal of the entire record it is clear to this Court that the letter dated November 10, 1992, which is on LGM stationary and signed by Mr. Tom Addario, then acting president of LGM, modified the past agreements between Swenson, Calegan and LGM. What is not apparent is when, where and how the alleged breach by either plaintiffs or defendants occurred. The record is void of adequate facts for an informed conclusion to be reached. This indicates to this Court that there are vital issues of facts yet to be determined which are at the very heart of this action and germane to the allegations of all parties.
Accordingly, we reverse the trial court’s judgment granting the plaintiffs’ motion for summary judgment and remand the matter for a trial on the merits.
REVERSED AND REMANDED.
ARMSTRONG, J., dissents.

. This hearing was pursuant to defendants’ request for a preliminary injunction against LGM and was held before Judge Nadine Ramsey. The injunction was denied. Defendants’ request for injunction was based on a fear that the plaintiffs gaming license was on the verge of revocation and that their unpaid commissions of over one million dollars were in jeopardy.