752 So.2d 347 (2000)
Barbara Ann BROWN, Individually and on Behalf of the Minors, James Brown, William Brown and Ruth Hayes, and on Behalf of the Succession of James Hayes, Jr.; James Hayes; Ruth Brown; and Joseph Brown
v.
COREGIS INSURANCE COMPANY, Lee E. Brumfield, Sunshine Bus Sales, Inc., and Tangipahoa Parish School Board.
Nos. 99 CA 0048, 99 CA 0049.
Court of Appeal of Louisiana, First Circuit.
February 18, 2000.
*349 Lee W. Rand, New Orleans, Counsel for Plaintiff/1st Appellant, Barbara Ann Brown, Individually, etc.
Gus A. Fritchie, Claiborne W. Brown, New Orleans, Counsel for Defendant/2nd Appellant, Coregis Insurance Company.
Christopher M. Moody, Hammond, Counsel for Defendant/Appellee, Tangipahoa Parish School Board.
Alan J. Yacoubian, Rene S. Paysse, Jr., New Orleans, Counsel for Defendant/Appellee, RCA Syndicate # 1, Ltd.
Sidney A. Marchand, III, Donaldsonville, Counsel for Defendant/ Appellee, Sunshine Bus Sales, Inc.
Before: GONZALES, FITZSIMMONS and WEIMER, JJ.
GONZALES, J.
This is an appeal from a judgment in a suit stemming from the death of James Hayes, Jr., an eleven-year-old boy who was killed while attempting to exit a school bus on March 20, 1997. The suit[1] was filed by plaintiffs, Barbara Ann Brown Hayes (the decedent's mother), individually and on behalf of minors, Jamel Brown,[2] William Brown, and Ruth Hayes (the decedent's siblings), and on behalf of the Succession of James Hayes, Jr.; James Hayes (the decedent's father); Ruth Brown (the decedent's grandmother); and Joseph Brown (the decedent's grandfather). Named as defendants in the suit were Lee E. Brumfield (the bus driver); the Tangipahoa Parish School Board (TPSB), Mr. Brumfield's employer and the lessee of the bus; Sunshine Bus Sales, Inc. (Sunshine), the lessor of the bus; Coregis Insurance *350 Company (Coregis), TPSB's insurer; and RCA Syndicate # 1, Ltd.[3] (RCA), Sunshine's insurer.[4]
Motions for summary judgment were filed by the plaintiffs, RCA, and Coregis on multiple issues. On July 29, 1998, the trial court signed a judgment addressing the issues raised in the motions for summary judgment. The judgment (1) granted a motion for summary judgment in favor of RCA, and dismissed all of the plaintiffs' claims against RCA; (2) denied the plaintiffs' motion for summary judgment regarding the liability of Sunshine; (3) denied the plaintiffs' motion for summary judgment regarding the liability of Mr. Brumfield, TPSB, and Coregis; (4) granted the plaintiffs' motion for summary judgment contending that the statutory limitation on recoverable damages in La. R.S. 13:5106 does not apply to their claims against Coregis and Mr. Brumfield; and (5) denied the plaintiffs' motion for summary judgment contending that La. R.S. 13:5106 does not limit the statutory limitation on recoverable damages to one limitation for both general damages and LeJeune damages.
The plaintiffs and Coregis filed appeals from the July 29, 1998 judgment. On December 21, 1999, this court issued a rule to show cause as to why certain aspects of the appeals should not be dismissed as appeals from partial judgments or from non-appealable interlocutory rulings. The parties timely responded, and this court now addresses each issue appealed as follows.

DENIAL OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY OF SUNSHINE
In the July 29, 1998 judgment, the trial court denied plaintiffs' motion for summary judgment regarding the liability of Sunshine. The plaintiffs appealed from this ruling. In response to this court's rule to show cause, the plaintiffs withdrew their appeal of this ruling in a brief dated January 7, 2000. Therefore, we need not address this issue.

DENIAL OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY OF BRUMFIELD, TPSB, AND COREGIS
In the July 29, 1998 judgment, the trial court denied plaintiffs' motion for summary judgment regarding the liability of Mr. Brumfield, TPSB, and Coregis. The plaintiffs appealed from this ruling. Although the parties and trial court attempted to certify this ruling as a partial final judgment under La. C.C.P. art. 1915(B), the denial of a motion for summary judgment is an interlocutory ruling and is not certifiable as final under La. C.C.P. art. 1915(B). In response to this court's rule to show cause why the appeal of this ruling should not be dismissed, the plaintiffs seek to have the matter reviewed under our supervisory jurisdiction.
We decline to exercise our supervisory jurisdiction over this matter. The appeal from the trial court's denial of the plaintiffs' motion for summary judgment regarding the liability of Mr. Brumfield, TPSB, and Coregis will be dismissed.

DENIAL OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING WHETHER THE LA. R.S. 13:5106 LIMITATION OF LIABILITY PROVIDES ONE "CAP" FOR BOTH GENERAL DAMAGES AND LEJEUNE DAMAGES
In the July 29, 1998 judgment, the trial court denied plaintiffs' motion for summary *351 judgment on the issue of whether the limitation of liability in La. R.S. 13:5106 provides one "cap" for both general damages and LeJeune damages. Although the parties and the trial court attempted to certify this ruling as a partial final judgment under La. C.C.P. art. 1915(B), the denial of a motion for summary judgment is an interlocutory ruling and is not certifiable as final under La. C.C.P. art. 1915(B). In response to this court's rule to show cause why the appeal of this ruling should not be dismissed, the plaintiffs seek to have the matter reviewed under our supervisory jurisdiction.
We decline to exercise our supervisory jurisdiction over this matter. The appeal from the trial court's denial of the plaintiffs' motion for summary judgment regarding whether the limitation of liability in La. R.S. 13:5106 provides one "cap" for both general damages and LeJeune damages will be dismissed.

GRANT OF SUMMARY JUDGMENT IN FAVOR OF RCA AND DISMISSING ALL OF PLAINTIFFS' CLAIMS AGAINST RCA
In the July 29, 1998 judgment, the trial court granted a motion for summary judgment filed by RCA, and dismissed with prejudice all of the plaintiffs' claims against RCA. The plaintiffs appealed from this ruling. By joint stipulation filed with this court on January 6, 2000, the parties stipulated to the finality of this part of the judgment for purposes of appeal in accordance with La. C.C.P. art. 1915(B).[5]
RCA issued a commercial general liability policy to Sunshine for the period of July 27, 1996, to July 27, 1997. Sunshine was the owner of the school bus involved in the March 20, 1997 accident in which James Hayes, Jr. was killed. Sunshine leased the bus to TPSB on a month-to-month basis, and the lease was in effect at the time of the accident. The trial court granted RCA's motion for summary judgment, concluding RCA was not liable under the policy it issued to Sunshine because the "leased auto" exclusion of its policy excluded coverage to any covered auto while leased or rented to others.
The plaintiffs contend the trial court erred in granting RCA's motion for summary judgment because their "cause of action against Sunshine does not arise directly from the operation of the leased vehicle but instead ... [arises] from the negligence of Sunshine in refurbishing and outfitting the school bus prior to its being leased to the TPSB." According to the plaintiffs, Sunshine negligently failed to install a right side mirror on the bus prior to leasing it to TPSB, and that Mr. Brumfield would have had a view of the area where James Hayes, Jr. was being dragged had this mirror been installed. The plaintiffs contend this alleged independent negligence of Sunshine is covered under the RCA policy notwithstanding the "leased auto" exception.
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the *352 affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). A summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Wood v. Tubre, 98-1041 (La.App. 1 Cir. 5/14/99), 732 So.2d 838, 840, writ denied, 99-1721 (La.9/24/99), 747 So.2d 1126.
An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Ducote v. Koch Pipeline Co., L.P., 98-0942 (La.1/20/99), 730 So.2d 432, 435. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 93-0911 (La.1/14/94), 630 So.2d 759, 763. The parties' intent, as reflected by the words of the policy, determine the extent of coverage. La. C.C. art.2045; Reynolds, 634 So.2d at 1183. Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art.2047; Ducote, 730 So.2d at 435-436. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Reynolds, 634 So.2d at 1183. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. Ledbetter v. Concord General Corporation, 95-0809 (La.1/6/96), 665 So.2d 1166, 1169, amended on other grounds, 95-0809 (La.4/18/96), 671 So.2d 915, citing Pareti v. Sentry Indemnity Company, 536 So.2d 417, 420 (La.1988). However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured. Louisiana Insurance Guaranty Association, 630 So.2d at 764.
The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. Reynolds, 634 So.2d at 1183. It is equally well settled, however, that subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Ducote, 730 So.2d at 436.
With these guiding principles in mind, we proceed to interpret the insurance policy at issue herein.
The RCA policy issued to Sunshine provides, in pertinent part, as follows:
We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos."
* * * * * *
EXCLUSIONS

*353 This insurance does not apply to any of the following:
. . . .
7. LEASED AUTOS
Any covered "auto" while leased or rented to others....
We conclude the trial court correctly granted summary judgment in favor of RCA. The language of the policy clearly and unambiguously excludes all coverage under the policy for any covered auto while it is leased to another, regardless of the alleged cause of the injury for which coverage is sought. The plaintiffs urge us to interpret the policy as providing coverage for Sunshine's alleged negligence in failing to install a required mirror on the bus, because this alleged negligence "was independent of," although "concurrent with," the driver's negligent operation of the bus. However, the "leased auto" exclusion does not exclude coverage only when the alleged negligence arises from the operation of the leased vehicle; it excludes coverage, without qualification, once a covered auto is leased to another. Therefore, even if Sunshine failed to install a required mirror on the bus prior to leasing it to TPSB, under the plain language of the policy, coverage for that alleged negligence ceased as soon as the bus was leased to TPSB.
It is true that provisions which seek to narrow an insurer's obligation are strictly construed against the insurer. However, the rule of strict construction does not authorize the perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists. Ducote, 730 So.2d at 436, quoting from Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 75 (1939). It is only when an exclusion is subject to two or more reasonable interpretations, that a court should apply the interpretation which favors coverage. Reynolds, 634 So.2d at 1183. In this case, the "leased auto" exclusion is clear and is subject to only one interpretation. When Sunshine leased the bus to TPBS, any coverage for the bus was excluded under the RCA policy. This assignment of error is without merit.

GRANT OF SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS REGARDING INAPPLICABILITY OF LA. R.S. 13:5106 LIMITATION ON DAMAGES TO CLAIMS AGAINST BRUMFIELD AND COREGIS
In the July 29, 1998 judgment, the trial court granted a motion for summary judgment in favor of the plaintiffs, determining the statutory limitation on damages contained in La. R.S. 13:5106 does not apply to the plaintiffs' claims against Mr. Brumfield and Coregis. The trial court and parties certified this ruling as a partial final judgment under La. C.C.P. art. 1915(B), and Coregis appealed.[6]

Applicability of La. R.S. 13:5106 to claims against Mr. Brumfield
The Louisiana Governmental Claims Act (LGCA), La. R.S. 13:5101-5112, was enacted to limit the liability of public entities. La. R.S. 13:5106(E). According to La. R.S. 13:5101(B), the LGCA "applies to any suit in contract or for injury to person or property against ... a political subdivision of the state, as defined herein, or against an officer or employee of a political subdivision arising out of the discharge of his official duties or within the course and scope of his employment." (Emphasis added.) Although Section 5101(B) of the LGCA clearly refers to employees of political subdivisions, the plaintiffs argue the limitation of liability *354 contained in Section 5106 of the LGCA does not extend to employees of political subdivisions because they are not specifically referenced in Section 5106. This argument is disingenuous. Sections 5101 and 5106 are both included in the "Part" of Title 13 of the Louisiana Revised Statutes which the legislature designated as the LGCA, that is, "PART XV. SUITS AGAINST STATE, STATE AGENCIES, OR POLITICAL SUBDIVISIONS." Under basic rules of statutory construction, it is clear the provisions of Section 5101(B) must be read in pari materia with Section 5106. A part or section of an act should be interpreted in connection with the rest of the act. Thibaut v. Board of Commissioners of Lafourche Basin Levee District, 153 La. 501, 96 So. 47, 48 (1923); Hall v. Hall, 617 So.2d 204, 206 (La.App. 3 Cir.1993). As such, in accordance with the terms of Sections 5101(B) and 5106, in any suit against an employee of a political subdivision, the limitations contained in Section 5106 apply.
It is undisputed that Mr. Brumfield, the driver of the school bus involved in the accident at issue, was an employee of TPSB, a political subdivision of the state.[7] Therefore, the plaintiffs' claims against Mr. Brumfield are subject to the limitation of liability contained in La. R.S. 13:5106, and the trial court erred in concluding otherwise. The summary judgment ordering that the limitation of liability in La. R.S. 13:5106 does not apply to the plaintiffs' claims against Mr. Brumfield will be reversed.

Applicability of La. R.S. 13:5106 to claims against Coregis
The next issue to be addressed is whether the limitation of liability in favor of political subdivisions contained in La. R.S. 13:5106 is also applicable to claims against their insurers. The record establishes that, at the time of the accident, TPSB had a "school auto coverage" insurance policy with Coregis with a $1 million limit of liability above a $50,000.00 self-insured retention, and a $5 million umbrella policy above a $10,000.00 self-insured retention.
The Coregis "school auto coverage" policy issued to TPSB provides, in pertinent part, as follows:
We will pay all sums in excess of the "Self-Insured Retention" which an "Insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance, or use of a covered "auto." (Emphasis added.)
Further, the Coregis umbrella policy issued to TPSB provides, in pertinent part, as follows:
(1) We will pay on behalf of the "insured" those sums in excess of the "Retained Limit" which the "Insured" by reason of liability imposed by law, or assumed by the "Insured" under contract prior to the "Occurrence", shall become legally obligated to pay as damages for:
(a) "Bodily Injury";
* * * * * *
arising out of an "Occurrence" during the POLICY PERIOD stated in Item 2 of the Declarations (the "Policy Period"). (Emphasis added.)
We have analyzed the above language using the rules of insurance contract interpretation set forth earlier in this opinion. Under the unambiguous terms of the contract between Coregis and TPSB, Coregis is only liable to the extent TPSB "legally must pay" or "shall become legally obligated to pay" "by reason of liability imposed by law." An insurance company may limit its coverage, or the liability of the company, to pay only such sums as the insured shall become obligated to pay by *355 reason of the liability imposed upon him by law. Ruiz v. Clancy, 182 La. 935, 162 So. 734, 735 (1935). It is well settled that an insurer is entitled to contractually limit its liability in terms of degrees of exposure and maximum amounts so long as these contractual provisions are not in conflict with the law or public policy. Ducote, 730 So.2d at 436; Freyoux v. Estate of Bousegard, 484 So.2d 761, 762 (La.App. 1 Cir.), writ denied, 486 So.2d 753 (La.1986).
The plaintiffs claim the limitation of liability in Coregis' policy to only those amounts TPSB "legally must pay" or "shall become legally obligated to pay" offends the public policy of full compensation to those injured due to the negligent operation of school buses. According to the plaintiffs, this public policy is embodied in La. R.S. 17:159.1 and La. R.S. 32:601-603.
Louisiana Revised Statute 17:159.1, enacted in 1958, allows all parish and city school boards which contract for the use of privately owned school busses to obtain vehicular insurance to cover the busses and their owners. Similarly, La. R.S. 32:601, enacted in 1950, allows public entities, including school boards, to obtain insurance covering the operation, use, or maintenance of motor vehicles owned and operated by such entities. Under La. R.S. 17:159.1(C) and La. R.S. 32:603, insurers are precluded from asserting any school board's governmental immunity in any suit under the policy.
Both of these statutory schemes were enacted at a time when school boards, as public entities, were immune from suit. However, governmental immunity has since been abolished as to all suits for injury to person or property and as to all suits in contract, by amendment to Article XII, § 10(C) of the Louisiana Constitution.[8] Thus, La. R.S. 17:159.1(C) and La. R.S. 32:603, insofar as they preclude an insurer from asserting "immunity," are superfluous in that they pertain to a governmental immunity which no longer exists. These statutes do not address a "limitation of liability" which is at issue in this case. The limitation of liability contained in La. R.S. 13:5106 does not grant "immunity" to governmental entities; rather, it merely limits the amount of recoverable damages against any school board.[9] This "limitation of liability" is specifically authorized by Article XII, § 10 which states, "the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all *356 cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages." Therefore, although school boards are no longer immune from personal injury lawsuits, the legislature has chosen to limit the amount of recoverable damages against school boards in order "to curb the trend of governmental liability abuses," and "to balance an individual's claim against the needs of the public interests and the common good of the whole society...." La. R.S. 13:5106(E)(3).
In light of the limitation of liability in cases such as this, we conclude the limitation of Coregis' policy coverage to the liability of its insured, the TPSB, does not impermissibly impinge on the plaintiffs' ability to be compensated for losses due to the alleged negligent operation of the school bus. Rather, the limitation merely recognizes a public entity's ability to obtain insurance to protect against judgments against it, as well as an insurer's ability to contractually limit its coverage to the liability of its insured. Even if the limitation of liability contained on La. R.S. 13:5106 is not available to Coregis directly, it is a limitation of liability imposed by statute on Coregis' insured, TPSB. This fact, combined with the policy language which limits Coregis' liability to that which the insured becomes "legally obligated to pay," indeed does have the effect of limiting Coregis' liability. This combination of law and contract creates rights we are not at liberty to ignore.
We conclude the trial court erred in granting summary judgment in favor of the plaintiffs ordering that the limitation of liability in favor of political subdivisions contained in La. R.S. 13:5106 is inapplicable to claims against their insurers. This part of the judgment will be reversed.[10]

DECREE
For the foregoing reasons, this court orders as follows:
(1) The plaintiffs' appeal from the July 29, 1998 judgment's denial of the plaintiffs' motion for summary judgment regarding the liability of Mr. Brumfield, TPSB, and Coregis is DISMISSED.
(2) The plaintiffs' appeal from the July 29, 1998 judgment's denial of the plaintiffs' *357 motion for summary judgment regarding whether the La. R.S. 13:5106 limitation of liability provides one "cap" for both general damages and LeJeune damages is DISMISSED.
(3) The July 29, 1998 judgment's grant of summary judgment in favor of RCA Syndicate # 1, Ltd. and dismissing all of plaintiffs' claims against RCA Syndicate # 1, Ltd. is AFFIRMED.
(4) The July 29, 1998 judgment's grant of summary judgment in favor of the plaintiffs regarding the inapplicability of La. R.S. 13:5106 limitation of liability as to claims against Lee E. Brumfield and Coregis Insurance Company is REVERSED. Summary judgment is hereby RENDERED in favor of Lee E. Brumfield, who is entitled to the protection of the limitation of liability in La. R.S. 13:5106 as an employee of the Tangipahoa Parish School Board. Summary judgment is hereby RENDERED in favor of Coregis Insurance Company, which is entitled to enforce the limitation of liability in its policy with the Tangipahoa Parish School Board.
Costs of this appeal are to be equally borne by the plaintiffs and Coregis Insurance Company.
NOTES
[1] The plaintiffs actually filed two suits which were later consolidated by order of the trial court dated July 7, 1997.
[2] In the original petition, Mrs. Brown sued on behalf of "James Brown." By "Second Amending and Supplementing Petition," the minor's name was corrected to "Jamel Brown."
[3] In the plaintiffs' first amending and supplemental petition, RCA Syndicate # 1, Ltd. was incorrectly referred to as Illinois Insurance Exchange, Inc.
[4] Although ABC Insurance Company and XYZ Insurance Company were also named as defendants in the first amending and supplemental petition, these defendants are not parties to the present appeal.
[5] Under former La. C.C.P. art. 1915(B), a partial judgment was final if (1) all of the parties to the suit expressly agreed to the finality of the judgment, or (2) the trial court designated the ruling as a final judgment after an express determination that there was no just reason for delay. In the instant case, pursuant to former La. C.C.P. art. 1915(B), the parties expressly agreed to the finality of that part of the judgment granting RCA's motion for summary judgment. We note that La. C.C.P. art. 1915(B) has recently been amended by 1999 La. Acts No. 1263, § 1. Under the amended article, a partial judgment shall not constitute a final judgment unless it is designated as such by the court after an express determination that there is no just reason for delay. Under the amended article, a partial judgment can no longer constitute a final judgment merely by specific agreement of the parties. However, the amendment to La. C.C.P. art. 1915(B) does not apply to the instant case because, according to Section 3 of Act 1263, "[t]he provisions of this Act shall become effective on January 1, 2000, and shall apply to all actions filed on or after January 1, 2000." The instant action was filed prior to January 1, 2000.
[6] In its appellate brief, Coregis contends the trial court may have prematurely decided whether the La. R.S. 13:5106 limitation applies to Coregis and Brumfield, because there has yet to be a determination on the merits regarding their respective liability and the monetary amount of the plaintiffs' damages. If the amount of damages awarded to the plaintiffs is less than the $500,000.00 limitation in La. R.S. 13:5106, Coregis contends the trial court's ruling would merely be an advisory opinion. We conclude this argument presents no issue for review before this court.
[7] Louisiana Revised Statute 13:5102(B) reads: As the term is used in this Part, "political subdivision" means any parish, municipality, special district, school board, sheriff, public board, institution, department, commission, district, corporation, agency, authority, or an agency or subdivision of any of these, and other public or governmental body of any kind which is not a state agency. (Emphasis added.)
[8] Louisiana Constitution Article XII, § 10, provides:

(A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
(B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.
(C) Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.
[9] Louisiana Revised Statute 13:5106(E) specifically states that the purpose of Section 5106 is not to reestablish immunity based on the status of sovereignty. Section E reads, in pertinent part:

The legislature finds and states:
* * * * * *
(4) That the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the constitution.
[10] In light of our resolution of this issue on the basis of Coregis' right to contractually limit its liability to the liability of TPSB, we need not decide the plaintiffs' argument that the limitation of liability contained in La. R.S. 13:5106 is a "personal" defense only available to TPSB. However, we make the following observation. In 1936, Judge (later Justice) McCaleb authored Rome v. London & Lancashire Indemnity Co. of America, 169 So. 132, 137 (La.App.Orl.1936), essentially a one-judge opinion (Judge Westerfield concurred and Judge Janvier dissented) opining that "the defense of immunity from liability because of the engagement in the operation of a governmental function is one which is purely personal to the public corporation." (Rome purportedly overruled a prior opinion of the same circuit, Loustalot v. New Orleans City Park Improvement Association, 164 So. 183 (La.App.Orl.1935)). (Whether a one-judge opinion can overrule a prior opinion of the same circuit is debatable.) The Rome case would essentially have no precedential value except for the fact that Justice Tate of the Louisiana Supreme Court later cited Rome for the proposition that "any immunity of [a] governmental unit or its employee for negligent acts is not available as a defense against suit[.]" in Snell v. Stein, 261 La. 358, 259 So.2d 876, 878 n. 3 (1972).

In arriving at the "personal defense" principle in Rome, Judge McCaleb was faced with two harsh legal realities which existed: first, the state constitution granted public entities and their employees full immunity from suit; second, contributory negligence was a total bar to recovery in a tort setting. Additionally, at the time, the jurisprudential limitation on quantum in a wrongful death suit was $3,000.00. Now, constitutional immunity for public entities has been abrogated for personal injury claims; contributory negligence as a bar has been replaced with more equitable comparative fault principles; and, since 1936, the amount and types of damages (i.e., LeJeune damages) available in a wrongful death suit has greatly expanded, an expansion resulting not only from inflation. Thus, the policy considerations underlying Rome no longer exist. Further, as stated in the body of this opinion, we are here dealing with a limitation of liability, not immunity.