AMERICAN HOME ASSURANCE COMPANY

v.

LIBERTY MUTUAL INSURANCE COMPANY et al.

No. CIV.A. 02–3842.

United States District Court, E.D. Louisiana.

Aug. 2, 2006.

Robert I. Siegel, Gieger, Laborde & Laperouse, LLC, Krystena L. Harper, Gieger, Laborde & Laperouse, LLC, Nathan L. Schrantz, Simon, Peragine, Smith & Redfearn, LLP, New Orleans, LA, for American Home Assurance Company, Plaintiff.

Judy Y. Barrasso, Barrasso Usdin Kupperman Freeman & Sarver, LLC, New Orleans, LA, Kenneth Benjamin Krobert, Law Offices of Marvin H. Olinde, Metairie, LA, Brian Joseph Capitelli, Barrasso Usdin Kupperman Freeman & Sarver, LLC, New Orleans, LA, Frank M. Walker, Jr., Plauche, Smith, & Nieset, H. David Vaughan, II, Plauche, Smith, & Nieset, Lake Charles, LA, for Liberty Mutual Insurance Company, Lumberman's Mutual Casualty Company, Defendants.

Sidney W. Degan, III, Degan, Blanchard & Nash (New Orleans), Richard C. Badeaux, Degan, Blanchard & Nash (New Orleans), New Orleans, LA, for Transporter Inc, Third Party Defendant.

### ORDER AND REASONS

LEMMON, District Judge.

**IT IS HEREBY ORDERED** that American Home Assurance Company's motion for summary judgment is **GRANTED.** (Document # 66.)

**IT IS FURTHER ORDERED** that Liberty Mutual Insurance Company's cross motion for summary judgment is **DENIED**. (Document # 64.)

**IT IS FURTHER ORDERED** that Liberty Mutual Insurance Company's motion *in limine* to exclude expert testimony is **GRANTED**. (Document # 57.)

## I. BACKGROUND

On January 7, 2001, Howard Dwayne Godeaux was killed in an accident when the 18–wheel tractor trailer he was driving for Borden's Dairy was struck and disabled by a renegade right-rear tire and rim from a 40' long-haul container trailer that came loose and crossed the median on Interstate 10. The trailer that lost the tire and rim was unit 1659, owned by Dana Transport, Inc. (Dana Transport) and/or Dana Leasing Systems, Inc. (Dana Leasing)[1] and leased to Crowley Maritime/Crowley Liner Services, Inc./Crowley Marine Services, Inc. d/b/a Crowley Marine Transport (Crowley).

American Home Assurance Company (American Home) provides "Commercial Auto Liability Coverage" for named insureds, Dana Transport, Dana Container, Dana Leasing, and others. The policy provides coverage for liability resulting from the ownership, maintenance or use of a covered auto. Lumberman's Mutual Casualty Company (Lumberman's) is Crowley's insurer. Dana Transport, as owner, and Dana Leasing, as lessor, are additional insureds on the Lumberman's policy as the owner/lessor of the trailer leased to Crowley. Liberty Mutual Insurance Company (Liberty) issued a policy for "Garage Liability Coverage" to named insureds, Dana Transport, Dana Container, Dana Leasing, and others, providing coverage for "damages because of bodily injury or property damage ... caused by an accident and resulting from garage operations involving the ownership, maintenance or use of covered autos."[2]

Crowley entered into an "Equipment Interchange Agreement" with The Transporter, Inc. (Transporter), which set forth their respective obligations when Transporter possessed and operated Crowley's equipment. Transporter was operating the trailer at the time of the accident.

In addition to the lease arrangement with Dana Leasing, Crowley entered into a garage operations agreement with Dana Container, through which Dana Container would provide garage operations to Crowley as needed in those parts of the country where Crowley did not operate its own garage facilities. On January 3, 2001, several days prior to the accident, Crowley called upon Dana Container to repair a leaking wheel seal. Dana Container completed the repair, and Crowley paid for the repair.[3]

---

1. According to Liberty, Dana Leasing was dissolved on December 30, 1986, and its assets were distributed to Dana Transport. According to American Home, the owner of the trailer was International Equipment Logistics (IEL) or Dana Leasing. These inconsistencies do not affect the issues in this motion. The owner will be referred to as Dana Leasing, who is a named insured.

2. Subsection A of "SECTION I—COVERED AUTOS" defines a "covered auto" under designated symbol "21" in the policy as "Any Auto." Subsection A of "SECTION II–LIA-BILITY COVERAGE" provides coverage for "covered autos":
   "GARAGE OPERATIONS"—COVERED "AUTOS"
   We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos."

3. *See* Deposition of Dwight Menard, Exh. C, American Home's motion for summary judgment ("Crowley Liner Services understood, in

Godeaux's survivors filed a suit against the Dana entities[4] and Crowley, alleging *inter alia* that the Dana entities failed to conduct a proper inspection, the repair of the leaking wheel seal was negligently performed, and a loose wheel caused the accident that killed Godeaux. Liberty Mutual refused coverage and defense based upon a "leased auto exclusion."

On August 6, 2002, a settlement was reached through mediation. American Home contributed its $1,000,000 policy limit, and the Dana entities assigned to American Home their rights against Liberty and Lumberman's under the respective policies. American Home reserved its rights to decline coverage for the negligent garage operation, based on its policy's completed operations exclusion,[5] and to pursue contribution and bad faith claims for willful failure to contribute against Liberty and Lumberman's, as the Dana entities' co-insurers. *See* Compromise Settlement Agreement at 9, § 15; Reservation of Rights, Exh. G, American Home's motion for summary judgment. Lumberman's attended the mediation, but did not pay any part of the settlement. Liberty did not participate in the mediation or pay any part of the settlement.

American Home filed a complaint for a declaratory judgment that Liberty provides coverage to Dana Container for the negligent repair. American Home seeks contribution for amounts paid in settlement, and defense costs. Liberty and

American Home filed cross motions for summary judgment.[6]

## II. DISCUSSION

### A. Summary judgment standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir.1991); Fed.R.Civ.P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

### B. The "leased auto exclusion" in the Liberty policy

■ The cross motions for summary judgment question whether the leased auto exclusion in Liberty's commercial auto policy excludes coverage to Dana Container for negligent garage operations.

■ The interpretation of an insurance contract and its exclusions is a ques-

---

January of 2001, that the repair, the garage operations that were being done by Dana ...for Crowley, were being done by Dana Container.").

4. The Dana entities are incorporated as separate corporations. *See* American Home's motion for summary judgment, exh. N; deposition of Ron Dana.

5. The American Home and Lumberman's policies include a "completed operations exclu-

sion," which precludes coverage for bodily injury or property damage arising out of work that has been completed or abandoned. This exclusion is not relevant to this motion for summary judgment.

6. Liberty filed a motion *in limine* to exclude the expert testimony of Larry Osborne and R. Bryan Tilden (insurance experts). The motion is granted. The opinions of the insurance experts do not aid the court in the disposition of the coverage issue as a matter of law.

tion of law. *See Jarvis Christian Coll. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 197 F.3d 742, 746 (5th Cir.1999). Under Louisiana law, the general rules of contract interpretation apply to determine the common intent of the parties to the contract. *See Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La.1994). The intent of the parties as reflected in the policy determines the extent of the coverage. *Id.* The words of an insurance policy are given their "general, ordinary, plain, and proper meaning . . . unless [they] have acquired a technical meaning." *Id.*

■■■■ An exclusion from coverage must be clear and unmistakable. *See Roger v. Estate of Moulton*, 513 So.2d 1126, 1130 (La.1987). When the language is clear, it must be enforced as written. *See Reynolds v. Select Props. Ltd.*, 634 So.2d 1180, 1183 (La.1994). If there is an ambiguity in the policy of insurance, the ambiguous provision is construed against the insurer because it is the party who furnished the text. La. Civ.Code Ann. art. 2056 (West 1987). Exclusionary clauses are strictly construed against the insurer. *See Borden Inc. v. Howard Trucking*, 454 So.2d 1081 (La.1983). If the language of the exclusion is subject to more than one reasonable interpretation, the interpretation that favors coverage is applied. *See Reynolds*, 634 So.2d at 1183. The insurer bears the burden of proving exclusions from coverage. *Tunstall v. Stierwald*, 809 So.2d 916, 921 (La.2002).

American Home contends that the Liberty policy provides coverage to Dana Container under the general liability provision for negligent garage operations, and that the leased auto exclusion does not

apply to Dana Container because the trailer was leased from Dana Leasing. American Home contends further that, because the leased auto exclusion addresses the leasing hazard and not the repair hazard, the leased auto exclusion does not apply.

American Home further contends that the coverage afforded by the policy applies to each insured separately under the separation of insureds provision.[7] American Home contends that the leased auto exclusion applies to some corporate entities that are named insureds under the policy, such as Dana Leasing, but not to others, namely Dana Container, which does not lease autos but performs repair work on autos regardless of whether they are leased or from whom they are leased. Liberty argues that a separation of insured analysis does not apply because the leased auto exclusion applies to "any" covered auto leased or rented to others and precludes coverage for all insureds under the policy.

Subsection B of "SECTION II—LIABILITY COVERAGE" includes the leased auto exclusion:

**B. EXCLUSIONS**

. . . . .

**7. LEASED AUTOS**
Any covered "auto" while leased or rented to others . . . .

Liberty relies on *Brown v. Coregis Ins. Co.*, 752 So.2d 347 (La.Ct.App.2000) and *Providence Washington Ins. Co. v. Valley Forge Ins. Co.*, 42 Cal.App.4th 1194, 50 Cal.Rptr.2d 192 (1996) to support the argument that the leased auto exclusion precludes coverage. In *Brown*, an eleven-year-old boy was killed while attempting to exit a school bus. The school bus was leased to the Tangipahoa Parish School

---

7. SECTION VI—DEFINITIONS
. . . .
G. "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable

coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

Board on a month to month basis by the owner, Sunshine Bus Sales, Inc. *Id.* at 351. The trial court held that RCA Syndicate, Sunshine's insurer, was not liable under the policy issued to Sunshine because the "leased auto exclusion of its policy excluded coverage to any covered auto while leased or rented to others." *Id.* On appeal, the plaintiffs argued that the exclusion did not apply because the cause of action did not arise from the operation of the leased vehicle, but from Sunshine's negligence in refurbishing and outfitting the school bus by failing to install a right side mirror before leasing it to the School Board. *Id.* The Court of Appeal held that the language of the leased auto exclusion excludes all coverage for any covered auto while it is leased to another, regardless of the cause of the injury. *Id.* at 353. Therefore, coverage ceased as soon as the bus was leased to the School Board. *Id.*

In *Providence,* nine musicians and a driver were injured when the tire on a rented van exploded, and the van overturned on a California freeway. 50 Cal. Rptr. at 193, 412 P.2d 382. The van was owned by sole proprietor Paul Hifai, doing business as A–1 Rent–a–Car, an agency which operated 95 vehicles. *Id.* The rental vehicles were routinely serviced by Hifai's individually owned gasoline service stations, doing business as Tennyson Mobil Service. Providence Washington Insurance Company (Providence) issued business automobile and rental excess liability insurance policies to Hifai under his trade name A–1 Rent–A–Car, defended him in the personal injury actions, and settled the claims for $1.2 million. Providence then instituted an action seeking contribution from Hifai's commercial general liability insurer and the garage operations insurer, which issued policies covering the operations of Tennyson Mobil Service. *Id.* The trial court found that the polices did not cover bodily injury arising out of an owned auto while rented to another. *Id.* at 194,

412 P.2d 382. The Court of Appeal of California concluded that Hifai was the owner of the van because A–1 Rent–A–Car was a sole proprietorship and had no existence apart from Hifai. *Id.* Further, Hifai individually, not the d/b/a designated Tennyson Mobil Service, was the insured, and the rented van he owned was subject to the policy exclusion. *Id.* at 195, 412 P.2d 382. The negligent use of tire sealant, which was the negligent garage repair alleged, fit within the meaning of auto "maintenance" and was excluded from coverage under an insurance policy with a leased auto exclusion.

The facts of this case are unlike *Brown,* in which the insured who negligently performed the repairs also leased the bus. Liberty's conclusory allegation that Dana Transport is both the lessor and the entity that performed the repairs is not supported by the evidence. The deposition testimony evidence of Ron Dana and Dwight Menard establishes that Dana Container performed the garage repairs, but other Dana insureds owned the trailer and leased it to Crowley. Further, *Providence* is inapplicable to this case because the Dana entities do not comprise the sole proprietorship of Ron Dana. The articles of incorporation and the deposition testimony of Ron Dana establish that the Dana entities insured by Liberty are separate corporate entities, and Liberty presents no evidence to the contrary.

"[T]he effect of a separation of insureds provision upon a given exclusion turns upon the precise terms used in that particular exclusion." *Stewart Title Guar. Co. v. Kiefer,* 984 F.Supp. 988, 996 (E.D.La.1997). Liberty interprets the language of the policy-"Any covered auto while leased or rented to others"-as meaning that the leased auto exclusion should be read to apply to any covered auto while leased or rented to others "by any insured." Liberty's interpretation enlarges

the meaning of the leased auto restriction beyond what is stated in the policy. The precise terms of the leased auto exclusion do not include a reference to "any insured" or "an insured."

Moreover, Liberty's interpretation is in conflict with Section VI(G) of the policy, which defines the insured as any person or organization qualifying as an insured in the "Who is an Insured" provision of the policy and specifically states that the coverage "applies separately to each insured who is seeking coverage or against whom a claim or suit is brought." *See Louisiana Ins. Guaranty Assoc. v. Interstate Fire & Casualty Co.,* 630 So.2d 759, 763 (La.1994) ("[O]ne policy provision is not to be construed separately at the expense of disregarding other policy provisions."). According to Ron Dana's testimony, all of the corporations are separate. Further, the individual corporations are listed as separate named insureds in the Liberty policy. The court concludes that, when the leased auto exclusion is read in concert with the definition of "insured," the Liberty policy, including the exclusions, applies separately to each insured.

American Home presents Liberty's coverage manual, the PAL Reference Guide, to support its argument that the exclusion does not apply to Dana Container because it is in the garage business only, not the leasing business. *See* Exh. S, American Home's opposition to Liberty's motion for summary judgment. Under section 7 of garage exclusions, PAL states that the common interpretation of the leased auto exclusion is that it "eliminates liability coverage for an insured/customer that is in the rental or leasing business."

Dana Container is the corporate insured whose garage operations are insured.

Dana Leasing is the corporate insured that leased the trailer. The repairs performed shortly before the accident were not part of any lease agreement with Crowley, but part of a separate obligation to provide maintenance to Crowley in the Houston area. The repairs required authorization from Crowley, and Crowley was billed separately from any leasing invoices. Accordingly, the leased auto exclusion does not apply to the Godeaux claims for which Dana Container seeks coverage under the Liberty policy. Under Section II, Liability Coverage, of the Liberty policy, Liberty is obligated to pay all sums Dana Container must pay as a result of negligent garage operations involving the maintenance of any auto, *i.e.* negligent repair of the tanker trailer.

There are no disputed issues of material fact, and Home Assurance is entitled to judgment as a matter of law, declaring that there is coverage under the Liberty policy for any liability incurred by Dana Container for negligent garage operations. Because there is coverage under the Liberty policy, Liberty had a duty to defend Dana Container in the Godeaux litigation. *See Steptore v. Masco Const. Co.,* 643 So.2d 1213, 1218 (La.1994).

**C. Contribution to American Home for the settlement with the plaintiffs**

American Home argues that, once it is determined that there is coverage under Liberty's policy and because it is undisputed that its completed operations exclusion is applicable, it must only establish the potential liability of Dana Container, not actual liability, in order to receive contribution for the amount if paid in settlement.[8] American Home contends that the

---

8. American Home alleges most of the $1,000,000 paid in settlement was paid to settle the alleged liability of Dana Container for the alleged negligent repair shop operation. The issues of the amount attributable to allegations of owner/lessor's liability and the amount attributable to negligent repair shop

only known maintenance work on the trailer was performed by Dana Container days before the accident. American Home argues that it was evident from the discovery and the Godeaux plaintiffs' expert reports that Dana Container was potentially liable because the experts opine that the tires and rims that came loose from the trailer were the same ones that had the wheel seal repaired by Dana Container. Further, American Home contends that summary judgment is proper because Liberty had actual notice of the Godeaux complaint, had knowledge of the settlement negotiations, was asked to participate in the defense and mediation of the Godeaux suit, and willingly chose not to participate.

In *Burke v. Ripp*, 619 F.2d 354 (5th Cir.1980), the Court of Appeals affirmed the district court determination on summary judgment that an original defendant who settled a case with the original plaintiff need only establish "potential liability" in a cross claim against a third party for indemnification of the amount paid in settlement. *Id.* at 355–56. The Court of Appeals held that "the appellant [third party] was adequately protected by his continuing notice of the progress of the negotiations, his opportunity to approve or disapprove the settlement, and his apparent acquiescence to its terms." *Id.* at 359–60. The Court of Appeals "found no considerations which, in fairness to the appellant, call for a demonstration of actual liability." *Id.* at 360.

Liberty does not argue that "potential liability" is not the standard nor that American Home must demonstrate actual liability. Nor does Liberty contend that it was not aware of the settlement negotiations or that it wished to participate.

The court concludes that, because it is not disputed that Liberty knew of its potential liability in the Godeaux litigation

and did not participate in the settlement, American Home is entitled to recover the portion of the $1,000,000 attributable to the negligent garage operations.

operation recoverable are not before the court.