TOBIAS, J.,
concurs.
hi respectfully concur.
The law does not permit a collateral attack on a final, definitive judgment[1] that is close to two-years old. We cannot order that the entirety of the contingent balance be paid to Ms. lies. And similarly, we cannot order the state’s insurer to pay the contingent balance into the Future Medical Care Fund (“FMCF”).
In lies v. Ogden, 09-0820 (LaApp. 4 Cir. 2/26/10), 37 So.3d 427, units denied, 10-0863 (La.9/3/10), 44 So.3d 694 and 10-0986 (La.9/3/10), 44 So.3d 695, we amended our original decree on rehearing to state in pertinent part as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment is hereby rendered in favor of the plaintiff, Michelle lies, and against the defendants, Roger H. Ogden, II, State of Louisiana, Louisiana Health Sciences Center, and American Alternative Insurance Corporation, for the balance of the judgment in the amount of $4,162,229.31.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the future medical expenses of $290,999.62 and the future related benefits (attendant care) of $3,127,768.58 awarded to the plaintiff, Michelle lies, shall be paid in accordance with the provisions of | ^Louisiana_Revised_Statutes 13:5106(b)(3)(c).[2] [Boldface in original; emphasis added by underlining.]
*1044 \Jd, p. 4, 37 So.3d at 455.
On 17 September 2010, Ms. lies filed a motion to transfer the American Alternative Insurance Corporation (“AAIC”) funds to the FMCF, La. R.S. 39:1533,[3] and *1045 to provide medical care and related benefits as ordered in the judgment.[4] In that motion and at the trial court hearing, she argued only for the |4funds to be transferred to the FMCF, not for the funds to be given directly to her. At the conclusion of the hearing, which addressed only the argument that the funds of AAIC should be transferred to the FMCF, the court denied both motions and this appeal followed.
At no time before the judgment became final did the plaintiff argue or even suggest that La. R.S. 13:5106 B(3)(c) does not apply to the state’s excess insurer, AAIC. If she had, the matter could have been considered by the trial court on a motion for new trial or by this court on appeal. Under the law, Ms. lies may not attack the judgment after the litigation of the underlying claims is final. This court intended for the state, and consequently, AAIC in accordance with its contractual insurance obligations, to pay all future medical expenses and related benefits in accordance with La. R.S. 13:5106 B(3)(c). No ambiguity whatsoever exists in the judgment. In addition, it is the statute itself that proscribes the language that the judgment should contain: that the claimant is entitled to medical care and related benefits that may be incurred subsequent to judgment, the court shall order that all medical care and related benefits incurred subsequent to judgment be paid from the Future Medical Care Fund as provided in R.S. 39:1533.2. Medical care and related benefits shall be paid directly to the provider as they are incurred. [Emphasis supplied.]
In any suit for personal injury against the state or a state agency wherein the court pursuant to judgment determines

Id.

In 2000, the legislature created the FMCF, Acts 2000, 1st Ex.Sess., No. 20, § 2, codified as La. R.S. 39:1533.2,[5] which states:
A. There is hereby established in the state treasury the “Future Medical Care Fund”, hereinafter referred to as the “fund”. The fund shall consist of such monies transferred or appropriated to the fund for the purposes of funding medical care and related benefits that may be incurred subsequent to judgment rendered against the Instate or a state agency as provided by R.S. 13:5106 and as more specifically provided in R.S. 13:5106(B)(3)(c). All costs or expenses of administration of the fund shall be paid from the fund.
B. The fund shall be administered by the treasurer on behalf of the office of risk management for the benefit of *1046 claimants suing for personal injury who are entitled to medical care and related benefits that may be incurred subsequent to judgment. Except for costs or expenses of administration, this fund shall be used only for payment of losses associated with such claims. At the close of each fiscal year, the treasurer shall transfer to the Future Medical Care Fund from the Self-Insurance Fund an amount equal to the monies expended from the Future Medical Care Fund during that fiscal year. Monies in the fund shall be invested by the state treasurer in the same manner as monies in the state general fund. Interest earned on investment of monies in the fund shall be deposited in and credited to the fund. All unexpended and unencumbered monies in the fund at the end of the fiscal year shall remain in the fund.
Had the legislature intended La. R.S. 39:1533.2 to exclude insurers of the state, it would have so stated. The legislature is fully aware of the insurance situation of the state; to imply otherwise would be ludicrous. State ex rel. Varna do v. Louisiana Highway Commission, 177 La. 1, 7, 147 So. 361 (1933).
Before attempting to interpret a statute, it is important to understand why the statute was created in the first place. As explained by the Court in Kimball v. Allstate Ins. Co., 97-2885, 97-2956, pp. 12-15 (La.4/14/98), 712 So.2d 46, 56-58:
In 1959, this court construed the sovereign immunity provision as it then existed as doing no more than giving the legislature the power to waive the traditional immunity from suit, but not the immunity from substantive tort liability. See Chamberlain v. State Through Dept, of Transp. and Development, 624 So.2d 874, 880 (La.1993), referring to Duree v. Maryland Casualty Co., 238 La. 166,
114 So.2d 594 (1959) and Stephens v. Natchitoches Parish School Board, 238 La. 388, 115 So.2d 793 (1959). This construction prompted a 1960 constitutional amendment to add language to the constitution which would assure that any waiver of immunity by the legislature would be both from suit and liability. Chamberlain, Id. After its amendment in 1960, Art. Ill, § 35 provided (emphasis added):
| (¡The Legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, municipalities, political subdivisions, public boards, institutions, departments, commissions, districts, corporations, agencies and authorities and other public or governmental bodies; and each authorization by the Legislature for suit against the State or other such public body ... shall be construed to be and shall be effective and valid for all purposes ... as a waiver of the defendant’s immunity both from suit and from liability. The Legislature shall, by special or general laws or resolutions, prescribe the procedural rules, including rules of venue and service or process, to govern suits against the state and other public bodies; the procedure in such suits, in the absence of applicable procedural rules promulgated by the Legislature, to be the same as in suits between private litigants. No judgment against the state or any public body shall be exigible, payable or paid except out of funds appropriated for payment thereof. The Legislature may waive any prescription or per-emption which may have accrued in favor of the state or other public body against any claim or claims on which suit is so authorized; ... No suit *1047 authorized under this constitutional provision shall be instituted in any court other than a Louisiana State court....
The amendment subtly changed the legislature’s mandate under the provision to provide “procedural” rules for suits against the state or political subdivisions. Whereas prior to the amendment the legislature was restricted to providing only for venue and service of process, and all other procedural issues were to be governed by the rules normally applicable to private litigants, after the amendment, such was not required given the catch-all nature of the phrase: “the procedure in such suits, in the absence of applicable procedural rules promulgated by the Legislature, to be the same as in suits between private litigants.” Thus, the legislature had the authority to adopt procedural rules different from those normally applicable to private litigants in areas other than those related to venue and service of process. It is additionally clear that Art. Ill, § 35 as amended in 1960, as with its earlier counterparts, did not require the legislature to promulgate any rules specifically applicable 17to whether or not a suit against a political subdivision would be by judge or jury, did not require that the legislature make the decision as to the mode of trial on behalf of the political subdivisions, nor did it require that all suits against political subdivisions be conducted in the same mode.
In 1960, the Legislature passed Act No. 27 “[t]o establish procedural rules of law in certain actions against the state or other public bodies, and to provide a method for payment of judgment rendered in such actions.” The Act was to apply only to suits against the state or other public bodies “expressly authorized by special or general law or resolution passed by the Legislature.” In addition to providing for venue, citation and service of process, prescription, and payment of judgments, Subsection 4 of this Act provided that no suit against the state or other public body shall be tried by jury. This particular subsection was codified at R.S. 13:5104. The Act also provided all other procedural questions would be determined in accordance with the same laws which applied in suits between private parties. The adoption of the prohibition against jury trials in a suit against the state or any other public body was, although not mandated by Art. Ill, § 35, in keeping with the legislature’s permissive authority thereunder to adopt procedural rules applicable to suits against the state.
With the passage of a new constitution in 1974, Art. Ill, § 35 was redesignated as Art. XII, § 10, and provided (emphasis added):
(A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
(B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.
(C) Procedure; Judgments. The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds ^appropriated *1048 therefor by the legislature or by the political subdivision against which judgment is rendered.
The 1974 Constitution contains an absolute prohibition against immunity from suit and immunity from liability in contract and tort suits against the state or its agencies or political subdivisions. Although Paragraph (B) provides a legislative waiver is required to sue the state or its political subdivisions for any action other than one in contract or tort, obtaining a legislative waiver of immunity from suit and/or tort was no longer required in cases involving contract and tort claims. In so doing, the “framers removed the former discretionary right to consent to suit and liability in tort from the legislature and reserved that right inviolate to the people, making that right a concrete one, beyond the legislature’s reach.” Chamberlain, 624 So.2d at 881. Regarding the “procedure” to be used in suits against state entities, Art. XII, § 10(C) simply provides the legislature “shall provide a procedure for suits against the state, a state agency, or a political subdivision” and shall “provide for the effect of a judgment.” This provision is virtually identical to Art. Ill, § 35 of the 1921 constitution, prior to its 1946 amendment, which provided the legislature “shall provide a method of procedure and the effect of the judgments which may be rendered therein.” In Chamberlain, we described the powers given the legislature under Paragraph (C) as “twofold.” First, Paragraph (C) allocates to the legislature the power to establish “procedures for suits” authorized under Paragraphs (A) and (B). Second, Paragraph (C) allocates to the legislature the power to enact legislation with respect to the enforcement of judgments against the state and to provide for appropriations. Chamberlain, 624 So.2d at 883. [Emphasis in original.]
The Louisiana Governmental Claims Act (“LGCA”), La. R.S. 13:5101-5112, was enacted to limit the liability of public entities. La. R.S. 13:5106 E. It is against this backdrop that one examines R.S. 13:5106 B(3)(c) [quoted supra and in footnote 2].
In other words, the amounts awarded to Ms. lies for future medical care ($290,-999.62) and for future attendant care ($3,127,768.58) are paid directly to the provider as they are incurred. La. R.S. 13:5106 B(3)(a). If Ms. lies dies and she has not incurred medical or attendant care up to the amounts awarded by judgment, the [ 9state is no longer obligated to pay the balance or any more future medical or attendant care; the state no longer owes the money and the judgment is extinguished. Thus, the state’s liability for the money awarded by judgment is contingent upon the plaintiff living until all the money awarded is depleted. This also applies to the insurance company, herein AAIC, that actually pays the funds for which the state is liable in the case at bar. AAIC’s liability is contingent. Further, pursuant to the statute, the money is never placed in a plaintiffs hands; it is paid directly to the provider. This guarantees that the money is used solely for the benefit of the claimant to obtain medical care and related benefits, the purpose for which it is intended.
The state’s liability for the plaintiffs future medical and attendant care arises only when and if such costs have been incurred. As its excess insurance carrier, AAIC’s liability is the same. To argue otherwise make La. R.S. 13:5106 B(3) and La. R.S. 39:1533.2 meaningless.
By way of illustration, La. R.S. 13:5106 B(l) establishes a statutory cap of $500,000.00 for all elements of a plaintiffs damages except for future medical care *1049 and related benefits. In James v. Jones, 99-966, p. 12 (La.App. 5 Cir. 3/22/00), 759 So.2d 896, 903, a woman was killed when the vehicle she was driving was struck by another vehicle driven by an officer of the St. John the Baptist’s Sheriff Office. One of the issues on appeal was whether the $500,000.00 statutory cap was applicable to the company who insured the sheriffs office. The court agreed that it did, stating than an insurer is only obligated to pay that which the insured is obligated to pay. See also Brown v. Coregis Ins. Co., 99-0048, 99-0049 (La.App. 1 Cir. 2/18/00), 752 So.2d 347.
The original judgment at issue herein casts the defendants, Dr. Ogden, the state, the Louisiana Health Sciences Center, and AAIC, for the balance of the judgment in the amount of $4,162,229.31. It is from that amount, that the future | inmedical expenses of $290,999.62 and the future related benefits (attendant care) of $3,127,768.58, are paid. We specified by our decree how those expenses must be paid, to-wit: in accordance with the provisions of La. R.S.13:5106 B(3)(c). Regardless from whom the plaintiff seeks the money, all her providers are paid from the FMCF as the expenses are incurred and not before. This provides protection for the state, as well as the plaintiff; the plaintiff is guaranteed to be paid the full amount of the award without the funds being subject to attorney’s fees and other expenses. The judgment must be read in its entirety, not piecemeal as Ms. lies suggests. Those two paragraphs of the judgment are interrelated. Thus, we have issued a judgment that applies to AAIC, as well as the state.
The majority opinion reaches the correct result in this case.
Finally, in her appeal Ms. lies assigns only the following error:
Plaintiff respectfully submits that the trial court erred in denying her motion and rule to show cause. The trial court did not issue written reasons for its Judgment. However, by failing to grant plaintiffs motion and rule to show cause, the trial court apparently, and erroneously, concluded that La. R.S. § 13:5106(b)(3)(c) is applicable to insurance companies and their sureties rather than exclusively applicable to the State of Louisiana. The trial court thus erred by failing to order AAIC and Great American to immediately pay to plaintiff her future medical expenses and future attendant care expenses, along with accumulated interest.
Plaintiff further submits that the trial court committed further error by failing to hold that La. R.S. § 13:5106(b)[sic](3)(e) is unconstitutionally vague, constitutes an unconstitutional taking of plaintiffs property, and/or •violates plaintiffs right to due process.
I respectfully disagree with my concurring colleague’s assessment that the majority’s opinion concerning the proper interpretation or application of La. R.S. 13:5106 B(3)(c) to a private liability insurer in Louisiana is dicta.

. The judgment became final and definitive of 3 September 2010.

. The correct citation is La. R.S. 13:5106 B(3)(c).
La. R.S. 13:5106 reads in pertinent part as follows:
A. No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court.
B. (1) The total liability of the state and political subdivisions for all damages for personal injury to any one person, including all claims and derivative claims, exclusive of property damages, medical care and related benefits and loss of earnings, and loss of future earnings, as provided in this Section, shall not exceed five hundred thousand dollars, regardless of the number of suits filed or claims made for the personal injury to that person.
(3)
(c) In any suit for personal injury against the state or a state agency wherein the court pursuant to judgment determines that the claimant is entitled to medical care and related benefits that may be incurred subsequent to judgment, the court shall order that all medical care and related benefits incurred subsequent to judgment be paid from the Future Medical Care Fund as provided in R.S. 39:1533.2. Medical care and related benefits shall be paid directly to the provider as they are incurred. Nothing in this Subparagraph shall be construed to prevent the parties from entering into a settlement or compromise at any time whereby medical care and related benefits shall be provided but with the requirement that they shall be paid in accordance with this Subparagraph.
*1044 C. If the state or a state agency or political subdivision is held liable for damages for personal injury or wrongful death, the court shall determine:
(1) The amount of general damages exclusive of:
(a) Medical care.
(b) Related benefits.
(c) Loss of earnings and/or support.
(d) Loss of future earnings and/or support.
(2) The amount of medical care, related benefits and loss of earnings and/or support to date of judgment.
(3) Whether the claimant is in need of future medical care and related benefits and the amount thereof; and
(4) Whether there will be a loss of future earnings or support, and the amounts thereof.
D. (1) "Medical care and related benefits” for the purpose of this Section means all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services, and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services.
(2)"Loss of earnings” and "loss of support" for the purpose of this Section means any form of economic loss already sustained by the claimant as a result of the injury or wrongful death which forms the basis of the claim. "Loss of future earnings" and "loss of future support” means any form of economic loss which the claimant will sustain after the trial as a result of the injury or death which forms the basis of the claim.
(4) "Derivative claims” include but are not limited to claims for survival or loss of consortium.
E. The legislature finds and states:
(1) That judgments against public entities have exceeded ability to pay on current basis.
(2) That the public fisc is threatened by these judgments to the extent that the general health, safety, and welfare of the citizenry may be threatened.
(3) That the limitations set forth in this Section are needed to curb the trend of governmental liability abuses, to balance an
individual’s claim against the needs of the public interests and the common good of the whole society, and to avoid overburdening Louisiana’s economy and its taxpaying citizens with even more new and/or increased taxes than are already needed for essential programs.
(4)That the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created co-dal articles and laws and also to assist in the implementation of Article II of the constitution.

. La. R.S. 39:1533 reads as follows:
A. There is hereby created in the department of the treasury a special fund to be known as the "Self-Insurance Fund”. The fund shall consist of all premiums paid by state agencies under the state's risk management program as established by this Chapter, the investment income earned from such premiums and commissions retained as provided by Title 39. This fund shall be used only for the payment of losses incurred by state agencies under the self-insurance program, premiums for insurance obtained through commercial carriers, administrative expenses associated with the management of the state's risk, law enforcement officers and firemen’s survivors benefits as provided for in R.S. 33:1981(C) and 2201(C), the payment of losses incurred by the Jefferson Parish Human Services Authority in accordance with R.S. 28:831(J), the payment of losses incurred by the Capital Area Human Services District in accordance with R.S. 46:2666, the payment of losses incurred by the Florida Parishes Human Services Authority in accordance with R.S. 28:856, the payment of losses incurred by the Metropolitan Human Services District in accordance with R.S. 28:866, the payment of losses incurred by the Northeast Delta Human Services Authority in accordance with R.S. 28:876, the payment of losses incurred by the South Central Louisiana Human Services Authority in accordance with R.S. 28:876, and the funding of the legal services, such funds to be adminis *1045 tered by the commissioner of administration.
B. The representation of the state and state agencies in all claims covered by the Self-Insurance Fund, and in all tort claims whether or not covered by the Self-Insurance Fund, shall be provided by the attorney general or by private legal counsel appointed by the attorney general, with the concurrence of the commissioner of administration in accordance with the provisions of R.S. 49:258. The attorney general shall be reimbursed for all reasonable costs incurred in providing the necessary legal services. The preceding sentence shall not be
interpreted to prevent direct payment by the office of risk management of private legal counsel and vendors. The fund shall be used for no other purposes. The office of risk management shall maintain separate accounts for each of the insurance categories.

. The state is self-insured for $5,000,000.00. AAIC is its excess insurer and, pursuant to its contract of insurance with the state, pays any additional money for which the state is responsible.

. See also La. R.S. 39:1533.