ELLIS, Judge:
This is a suit for damages by H. E. Wiese, Inc. and Copolymer Rubber & Chemical Corporation against Western Stress, Inc., and Security Insurance Company of Hartford. Plaintiffs allege that Western improperly performed certain stress relief work on a boiler, causing damages stipulated to be $73,000.00. Western answered, denying liability, and third partied Security, which had denied coverage under its policy, seeking indemnification. After trial on the merits, judgment was rendered in favor of plaintiffs and against Western for the stipulated damages, and dismissing both the main and third party demands as to Security. From this judgment, Western has appealed.
Wiese entered into a contract with Copo-lymer to overhaul a boiler. The work required Wiese to remove a tube sheet and 1,400 tubes from the boiler and replace them with new material. After the tube sheet had been replaced in the shell of the boiler, it was necessary to relieve the stresses caused by welding the tube sheet to the shell. Wiese contracted to have this work done by Western.
On March 7, 1977, Western presented a quotation for performing the job, including the following language:
“Job Scope:
“To provide stress relieving services at your Baton Rouge, Copolymer jobsite on an as required basis.
“For the Services:
“Western Stress will provide all necessary personnel, equipment and expendable materials required to post weld heat treat Tube Sheet welds at your Copolymer job-site.
“All stress relieving services will be recorded and documented and be presented to your representative to provide a permanent record of work performed.”
On March 11, 1977, a work contract was executed, containing the following pertinent provision:
“Contractor agrees to perform the following work: Furnish labor, materials not furnished by owner, supervision, tools, equipment, insurance, utilities, facilities, and perform each and every act necessary to do the stress relieving work on Waste Heat Boiler at Company’s jobsite within the Copolymer Rubber and Chemical Company’s complex at Baton Rouge, Louisiana, all in strict accordance with instructions from company’s Field Superintendent.”
Stress relief is a process, whereby newly welded joints are heated to about 1,100°F. in order to relieve internal stress caused by the welding. In this case, the work was to be performed after the tube sheet was welded to the outer shell of the boiler. The tube sheet itself is a circular sheet of steel, two inches in thickness and ten and one-half feet in diameter, perforated to receive 1,400 boiler tubes.
After the heat treatment had taken place, the tube sheet was found to be so distorted that many of the tube holes were so out of round that the tubes could not be inserted through the holes. As a result the tube sheet had to be removed and reshaped, and then reinstalled and properly heat treated.
In performing the stress relief work, Western heat treated only the welds proper. Plaintiffs’ expert witness testified that not *466 only the welds but the tube sheet itself had to be heat treated to relieve the internal stresses without resulting distortion.
Western’s expert testified that it did the work in accordance with its contract and with specifications provided by the American Society of Mechanical Engineers.
The trial judge accepted the testimony of plaintiffs’ expert that both the welds and the tube sheet should have been heat treated if the stresses were to be relieved without distortion, and found that Western had not properly performed the stress relief work. He further found that, under the work contract, Western was obligated to “perform each and every act necessary to do the stress relieving work”, and was therefore responsible for its own failure. He rejected Western’s argument that it was obligated, by its job quotation, only to heat treat the tube sheet welds. In this court, Western assigns as error the finding of the court in both respects.
We find no error. The trial court accepted the testimony of plaintiffs’ expert as to the proper method of conducting the stress relieving work. This is a finding based on evaluation of credibility of the witnesses, and we find no error in the ruling of the trial judge in this respect.
As to the second point, we find that the work contract controls. The job quotation is not the contract between the parties, but a preliminary step in arriving at an agreement. The work contract is the final agreement between the parties, and governs their relationship. We think that it clearly requires Western to do everything necessary to perform the stress relief work properly, and to furnish the expertise necessary thereto. Western failed in this respect and thereby breached the contract.
Finally, Western complains of the denial of its third party complaint against its insurer, Security, which denied coverage under its policy and refused to defend. Security claims that Western had no coverage under the policy because of the following exclusionary language therein:
“This insurance does not apply: . . . (k) to property damage to .. . (3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control; ...”
The trial judge found as a fact that Western had the care, custody, and control of the boiler and the tube sheet while it was carrying out its work. We find this to be correct as a matter of law and fact. The evidence shows that Western’s personnel performed all of the stress relief work. The law is clear that where the damaged property is the subject of the work performed, it is deemed to be in the care, custody, and control of defendant. See Hendrix Elec. Co., Inc. v. Casualty Reciprocal Exch., 297 So.2d 470 (La.App. 2nd Cir. 1974). We therefore agree with the trial judge that Security’s policy afforded no coverage to Western for the damages in this case.
The judgment appealed from is affirmed, at Western’s cost.
AFFIRMED.