634 So.2d 1180 (1994)
Ron REYNOLDS
v.
SELECT PROPERTIES, LTD., D/B/A Allsafe Mini Storage and Guaranty Income Life Insurance Company
v.
TRANSCONTINENTAL INSURANCE COMPANY.
No. 93-C-1480.
Supreme Court of Louisiana.
April 11, 1994.
*1182 Donald M. Meltzer, Baton Rouge, for applicant.
Clinton Hyatt, Jr., Stephen R. Wilson, Baton Rouge, for respondent.
Victor L. Roy, III, Kyle M. Keegan, Baton Rouge, Luther F. Cole, New Orleans, for amicus curiae, Self Storage Ass'n.
KIMBALL, Justice.[*]
On December 29, 1987, Ron Reynolds leased a self-storage unit in the Allsafe Mini Storage ("Allsafe") facility in Baton Rouge, Louisiana, for the storage of personal property belonging to him and his family. After a period of several months in 1989, during which time he had not visited the facility, Mr. Reynolds returned to find that some of his property had been stolen. On July 6, 1990, Mr. Reynolds filed suit against Guaranty Life Insurance Company ("Guaranty"), the owner of Allsafe Mini Storage, and Select Properties, Limited ("Select"), the management company employed by Guaranty to manage Allsafe, alleging that Guaranty and Select were responsible for the loss of his property. Guaranty and Select answered Mr. Reynolds' complaint and filed a third party demand against Transcontinental Insurance Company ("Transcontinental"), alleging that under the commercial general liability insurance policy sold by Transcontinental to Guaranty, Transcontinental owed Guaranty a defense to Mr. Reynolds' suit against Guaranty. On Transcontinental's motion, the trial court granted summary judgment, finding that the policy expressly excluded coverage for property damage to "personal" property in Guaranty's "care, custody or control." On appeal by Guaranty, the court of appeal affirmed the trial court's grant of summary judgment, holding that because Guaranty had a proprietary interest in the storage of Mr. Reynolds' property, Guaranty had exercised "care, custody or control" over the property and, therefore, the coverage exclusion in the Transcontinental policy applied, 616 So.2d 742. We granted Guaranty's writ application[1] to determine whether the lower courts' analysis of the applicability of the coverage exclusion is correct. Finding the lower courts erred in their analysis, we now reverse the trial court's grant of Transcontinental's motion for summary judgment and remand for further proceedings.

The Issues
The issues to be addressed in this case are: (1) does the coverage exclusion apply and therefore relieve Transcontinental of its obligation to provide Guaranty with a defense; and (2) if the exclusion does not apply, should Transcontinental's denial of coverage and refusal to provide Guaranty a defense be deemed "arbitrary and capricious" under La. R.S. 22:658.

The Law
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Vermillion Corp. v. Vaughn, 397 So.2d 490, 493 (La.1981). The burden is on the mover to establish that no *1183 material fact issues exist. Schroeder v. Board of Supervisors of La. State Univ., 591 So.2d 342, 345 (La.1991). Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. Chaisson v. Domingue, 372 So.2d 1225, 1227 (La.1979). Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Westerfield v. LaFleur, 493 So.2d 600, 605 (La.1986). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder, 591 So.2d at 345.
An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993). The parties' intent, as reflected by the words of the policy, determine the extent of coverage. La.Civ.Code art. 2045; Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co., 93-0911, p. 5, 630 So.2d 759, 763 (La.1994). Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. Interstate, 630 So.2d at 763; La.Civ.Code art. 2047.[2] An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Interstate, 630 So.2d at 763. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. Central La. Elec. Co. v. Westinghouse Elec. Corp., 579 So.2d 981, 985 (La.1991). However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured. Interstate, 630 So.2d at 763-64.
The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. Garcia v. St. Bernard School Bd., 576 So.2d 975, 976 (La.1991); Breland v. Schilling, 550 So.2d 609, 610 (La.1989).[3]
It is equally well settled, however, that subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Oceanonics, Inc. v. Petroleum Distrib. Co., 292 So.2d 190 (La.1974). As this court stated in Commercial Union Insurance Co. v. Advance Coating Co., 351 So.2d 1183, 1185 (La. 1977), quoting Muse v. Metropolitan Life Insurance Co., 193 La. 605, 192 So. 72 (1939):
The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties....
With these guiding principles in mind, we proceed to interpret the insurance policy at issue herein.

*1184 The Policy Language

The Transcontinental commercial general liability policy issued to Guaranty provides, in pertinent part:
We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property damage" to which this insurance applies.
* * * * * *
"Property damage" means:
a. physical injury to tangible property, including all resulting loss of use of that property; or
b. loss of use of tangible property that is not physically injured.
* * * * * *
Exclusions:
This insurance does not apply to: ...
j. "Property damage" to: ...
(4) personal property in your care, custody or control....
The jurisprudence interpreting the type of exclusion at issue herein recognizes two distinct circumstances under which the insured is held to have "care, custody or control" of property such that the exclusion will be applied to defeat coverage. The first, and most common, circumstance usually occurs where the insured is either a contractor or subcontractor who has been sued by the owner of the property upon which work was being performed, or is a party with whom property had been placed for use or repair. The suits brought by the property owners are normally for alleged negligence in the performance of the work or in the use of the property which led to damage to the property. See, e.g., Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081 (La.1983); Thomas W. Hooley & Sons v. Zurich Gen. Acc. & Liability Ins. Co., 235 La. 289, 103 So.2d 449 (1958); Duchmann v. Orleans Maritime Brokerage, Inc., 603 So.2d 818 (La.App. 4th Cir.), writ denied, 607 So.2d 568 (La.1992); State Farm Fire & Casualty Co. v. Zurich American Ins., 459 So.2d 205 (La.App. 3rd Cir.1984), writ denied, 463 So.2d 603 (La.1985); Petrol Indus. v. Gearhart-Owen Indus., 424 So.2d 1059 (La.App. 2nd Cir.1982); H.E. Wiese, Inc. v. Western Stress, Inc., 407 So.2d 464 (La.App. 1st Cir.1981); Commercial Capital Sys., Inc. v. Paille, 333 So.2d 293 (La.App. 1st Cir.1976); Hendrix Elec. Co., Inc. v. Casualty Reciprocal Exch., 297 So.2d 470 (La. App. 2nd Cir.1974); Industrial Supply Co. of La. v. Transamerica Ins. Co., 220 So.2d 126 (La.App. 3rd Cir.), writ denied, 254 La. 136, 222 So.2d 884 (La.1969). In these cases, the insured's actual physical possession of or control over the property determined whether the exclusion applied. The purpose of the exclusion under these circumstances is to prevent a general liability insurer from becoming a guarantor of the insured's workmanship in his ordinary operations.
The second circumstance under which the insured will be held to have "care, custody or control" of the property occurs where the insured has a proprietary interest in or derives monetary benefit from the property. The exclusion is applied in this type of situation because there might be some advantage to the insured in falsifying or exaggerating a loss, a moral hazard not contemplated or contracted for in a commercial general liability insurance agreement. Hendrix Elec. Co., 297 So.2d at 474; Gulf-Wandes Corp. v. Vinson Guard Serv., 459 So.2d 14 (La.App. 1st Cir.1984), writ denied, 464 So.2d 312 (La. 1985).
In Gulf-Wandes, supra, a lessor and lessee sought to recover against a guard service on the theory that the guard service's negligence caused a fire and damages to the insured premises. The guard service brought a third party claim against its excess insurers, asserting that if the guard service was cast in judgment, its excess insurers also should be cast in judgment to the extent of the policy limits and for the costs of defense. The trial court held in favor of the guard service, and the insurers appealed. In analyzing the exclusion, the court of appeal stated:
The apparent purpose for this type of exclusion is to protect insurers from the risks concerned in insuring property under the care, custody or control of the insured in the sense of being owned, rented or used by the insured and where there might be some advantage to the insured in falsifying or exaggerating a loss. This reason for *1185 the exclusion does not apply with reference to property belonging solely and unconditionally to others as in the instant case. Hendrix Electric Company, Inc. v. Casualty Reciprocal Exchange, 297 So.2d 470 (La.App. 2nd Cir.1974).
Gulf-Wandes, 459 So.2d at 19.
The court then looked to jurisprudence concerning the definition of "custody" in the context of La.Civ.Code art. 2317 and noted the following:
We construe the Article to mean by things in one's custody, such things over which that person maintains some sort of supervision and control either because he has an interest in them or derives a benefit from their use.
Gulf-Wandes, 459 So.2d at 19 (quoting Bonvillain v. Realty Operators, 26 So.2d 25, 28 (La.App. 1st Cir.1946)). The Gulf-Wandes court concluded "[t]he Vinson guard had neither a proprietary or monetary interest in the Gulf-Wandes operations nor did he derive any benefit from its operations." Gulf-Wandes, 459 So.2d at 19.
We agree with the court of appeal's determination that the analysis employed by the Gulf-Wandes court is the appropriate analysis for resolution of this case. Because neither Guaranty nor Select had physical control over Mr. Reynolds' personal property, the court of appeal correctly sought to determine whether Guaranty had a proprietary interest in or derived a benefit from storing the property. However, the court of appeal erred in its application of the principles enunciated in Gulf-Wandes when it determined that Guaranty derived a benefit from the storage of the property, in the form of rental receipts for the storage space leased by Guaranty to Mr. Reynolds, such that the policy exclusion applied.
We conclude Guaranty has no proprietary interest in and derives no monetary benefit from the property stored by Mr. Reynolds. The agreement between Mr. Reynolds and Guaranty was one of lease, defined and governed by the Louisiana Self-Service Storage Facility Act, La.R.S. 9:4756-9:4760.[4] Mr. Reynolds merely leased storage space at Allsafe. An interest in leased storage space is not the same as an interest in property stored in the leased storage space. Guaranty had no greater interest in Mr. Reynolds' personal property stored at the Allsafe facility than did the guard service in the property it was paid to guard in the Gulf-Wandes case. Furthermore, as explainedsupra, Guaranty did not own, rent, use or have exclusive physical possession of Mr. Reynolds' property stored at the facility. Thus, we conclude the court of appeal erred in its determination that Guaranty had a proprietary interest in storing Mr. Reynolds' property because it received rental fees from Mr. Reynolds for the lease of the storage space. Guaranty had no proprietary interest in and received no benefit from Mr. Reynolds' property. Instead, Guaranty received benefit from the lease of the storage space itself. Therefore, as Guaranty did not, according to the accepted definitions of the phrase explained herein, have "care, custody or control" of Mr. Reynolds' personal property, the exclusion contained in the commercial general liability policy sold by Transcontinental to Guaranty does not apply.
In holding that the "care, custody or control" exclusion relied upon by Transcontinental to deny coverage to Guaranty does not apply, we also necessarily have determined that Transcontinental owed a duty to Guaranty to defend against the suit:
Generally, the insurer's obligation to defend suits against its insured is broader than it liability for damage claims. And the insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. American *1186 Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969).
Meloy v. Conoco, Inc., 504 So.2d 833, 838 (La.1987). The allegations contained in Mr. Reynolds' petition clearly stated a cause of action based on negligence against Guaranty. The recitals contained in Mr. Reynolds' petition did not unambiguously exclude coverage under the policy of insurance issued by Transcontinental to Guaranty. Transcontinental therefore had a duty to defend on behalf of Guaranty against Mr. Reynolds' suit.
Finally, Guaranty asserts that Transcontinental is also liable for penalties and attorney's fees under La.R.S. 22:658 for its "arbitrary and capricious" denial of coverage. However, our disposition of the coverage question dictates that we remand the case to the trial court for further proceedings. Therefore, it would be inappropriate for us to resolve this issue at this time. Instead, Guaranty may raise this argument in the trial court at the appropriate time after remand.

Conclusion
For the foregoing reasons, we conclude the court of appeal erred in affirming the trial court's judgment granting Transcontinental's motion for summary judgment. We therefore reverse the judgments of the lower courts and remand the case to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Marcus, J. was not on the panel which heard and decided this case.
[1] 623 So.2d 1342 (La.1993).
[2] La.Civ.Code art. 2047 provides "[t]he words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter."
[3] See also Great American Ins. Co. v. Gaspard, 608 So.2d 981, 984 (La.1992) ("Exclusions must be narrowly construed and any ambiguity should be construed in favor of coverage.").
[4] Louisiana courts have consistently held, even prior to adoption of the Louisiana Self-Service Storage Facilities Act, that the relationship between operators of self-storage facilities and their customers is that of lessor-lessee. See Tassin v. Slidell Mini Storage, 396 So.2d 1261 (La.1981); Robert v. Espinosa, 576 So.2d 555 (La.App. 4th Cir.), writ denied, 578 So.2d 139 (La.1991); Cavet v. Taylor, 559 So.2d 910 (La.App. 4th Cir.1990); Brown v. Garic, 508 So.2d 123 (La.App. 4th Cir.1987).