| ALBERT CUTNO AND AKEISHA WHARTON | * | NO. 2019-CA-0478 |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| GOAUTO INSURANCE COMPANY AND BRITTANY NICHOLAS | * | FOURTH CIRCUIT |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-10426, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *
(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart, Judge Joy Cossich Lobrano)

LOBRANO, J., CONCURS IN THE RESULT

Preston L. Hayes
CHEHARDY SHERMAN WILLIAMS MURRAY RECILE STAKELUM &
HAYES, L.L.P.
One Galleria Boulevard, Suite 1100
Metairie, LA 70001
      COUNSEL FOR PLAINTIFFS/APPELLANTS

Michele Trowbridge Barreca
Matthew E. Simmons
PORTEOUS HAINKEL & JOHNSON, L.L.P.
704 Carondelet Street
New Orleans, LA 70130
      COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**

**SEPTEMBER 25, 2019**

Plaintiffs, Albert Cutno and Akeisha Wharton, appeal a grant of summary judgment in favor of Go Auto Insurance Company, on the basis that the policy had been cancelled for non-payment of the premium. For the reasons that follow, we affirm.

**BACKGROUND:**

Defendant, Brittany Nicholas, financed a policy of insurance issued by Go Auto Insurance Company ("Go Auto") by entering into a financing agreement with Auto Premium Assistance Company ("APAC"), and signed a promissory note obligating herself to make monthly payments to APAC. The note provided that if she failed to make timely payments, she would be in default of the financing agreement. Nicholas also signed a power of attorney authorizing APAC to request cancellation of the policy with Go Auto if the financing agreement was in default for ten days after the installment due date.

On June 21, 2017, as they were exiting a parking lot in New Orleans, plaintiffs, Albert Cutno and Akeisha Wharton ("plaintiffs"), were struck by a

vehicle being driven by Brittany Nicholas ("Nicholas"), who was attempting to enter the parking lot. Plaintiffs claimed to have been injured in the collision and filed suit against Nicholas and her alleged insurer, Go Auto Insurance Company, on October 30, 2017.

Go Auto filed an answer to the petition and, thereafter, on August 6, 2018, filed a Motion for Summary Judgment. Go Auto sought the dismissal of the claims against it, as a matter of law, as it argued there was no coverage in effect at the time of the June 21, 2017 accident due to the policy being cancelled.

On October 11, 2018, plaintiffs filed a Peremptory Exception of Nonjoinder of a Party under Articles 641 and 642 Relative to Defendant's Motion for Summary Judgment.

At the hearing on October 26, 2018, plaintiffs argued that it would be unfair to them and to Nicholas to go forward with the hearing, as Nicholas had never been served. The trial court continued the hearing until November, allowing time for plaintiff to be properly notified.

The parties returned to court in November, but as Nicholas had only been served three days prior to the hearing[1], the court again continued the hearing and ordered Go Auto to notify her of the new date. Nicholas was served on January 19, 2019 with notice of the hearing.

---

[1] In an unusual move, Go Auto hired a special process server to find and serve its co-defendant, Nicholas.

Nicholas did not appear at the hearing on February 22, 2019. After argument, the trial court rendered summary judgment in favor of Go Auto, dismissing all claims against it, with prejudice.

Plaintiffs appeal that judgment.

**DISCUSSION:**

Plaintiffs' sole assignment of error is that the trial court erred in granting summary judgment in favor of Go Auto, because Go Auto failed to carry its burden of proving that coverage was effectively cancelled through strict compliance with La. R.S. 22:1266. Specifically, the plaintiffs argue that Nicholas was not given a full ten day notice prior to cancellation.

Appellate courts review motions for summary judgment *de novo* "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, *i.e.,* whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law." *Johnson v. Williams,* 14-0903, p. 3 (La. App. 4 Cir. 2/14/15), 160 So.3d 1036, 1038 (citation omitted). A motion for summary is properly granted only if the pleadings, depositions, answers to interrogatories, certified medical records, written stipulations and admissions on file, together with the affidavits submitted, if any, show there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. La. Code Civ. Proc. Art. 966 A (3) and (4). The burden is on the mover to establish that no material fact issues exist but, where the movant will not bear the burden of proof at trial, the movant need only point out to the court that

there is an absence of factual support for one or more elements essential to the adverse party's claim. La. Code Civ. Proc. Art. 966 D(1); *Johnson,* 14-0903, pp. 3-4, 160 So.3d at 138 (citation omitted). Thereafter, the burden shifts to the adverse party to produce factual support sufficient to establish that a genuine issue of material fact exists such that summary judgment is not appropriate. *Id.* Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. *Johnson,* 14-0903, p. 4, 160 So.3d at 1038-39, *citing Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183. Summary judgment declaring a lack of coverage under an insurance policy is appropriate only when there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. *Id.*

"Arguments of counsel and briefs, no matter how artful, are not sufficient to raise a genuine issue of material fact. Despite the presence of disputed facts, summary judgment will be granted as a matter of law if the contested facts present no legal issues." *Rapp v. City of New Orleans,* 95-1638, p. 4 (La. App. 4 Cir. 9/18/96), 681 So.2d 433, 437.

The policy of insurance issued to Nicholas was for the period of March 10, 2017 to September 9, 2017. The first premium installment to APAC was due on March 23, 2017. On March 24, 2017 a ten day notice of cancellation was sent by APAC to Nicholas via email, which stated that the effective date/hour of

4

cancellation was April 3, 2017 at 12:01 a.m. Plaintiffs argue that Nicholas should have been afforded the opportunity to make a payment on April 3, 2017.

When an insurance company denies coverage based on the cancellation of the policy prior to the date of loss, the burden is on the insurance company to prove that the policy was properly cancelled. *Narcisse v. Evans,* 01-1092, p. 3 (La.App. 4 Cir. 1/16/02), 807 So.2d 339, 341. In this case, Go Auto cancelled the policy after receiving notice from APAC that Nicholas was in default of her financing agreement.

Louisiana Revised Statute 9:3550 sets forth regulations for insurance premium finance companies such as APAC. Specifically, La. R.S. 9:3550 G provides, in part:

> G. Insurance contracts may be canceled upon default as follows:
> (1) When a premium finance agreement contains a power of attorney enabling the insurance premium finance company to cancel any insurance contract, or contracts, or endorsements listed in the agreement, the insurance contract, or contracts, or endorsements shall not be canceled by the insurance premium finance company unless such cancellation is effectuated in accordance with this Subsection.
> (2) Upon default of the insurance premium finance agreement by the debtor, the premium finance company shall mail or send an electronic notice of cancellation to the insured, at his last known mailing or electronic address as shown on the records of the insurance premium finance company. In the event the default is timely cured, the premium finance company shall, within three business days from the time the default was cured, mail or send electronic notice of rescission of the cancellation notice to the insured, at his last known mailing or electronic address as shown on the records of

5

the premium finance company and to all other parties who had previously been sent notice of cancellation. In the event the default is not timely cured as provided herein and the insurance policy is canceled pursuant to the terms of the insurance premium finance agreement, a copy of the notice of cancellation of the insurance contract shall also be sent to the insurance agent negotiating the related insurance contract whose name and place of business appears on the insurance premium finance agreement. Such notice of cancellation shall also state the name of any governmental agency, holder of a security interest in the insured property, or third party also requiring notice of cancellation as shown on the insurance premium finance agreement.

(3)(a) Ten days after notice of cancellation has been mailed to the insured, if the default has not been cured, the insurance premium finance company may thereafter effect cancellation of such insurance contract, or contracts, or endorsements by sending to the insurer, by depositing in the mail or with a private carrier, or via electronic mail, within five business days after the date of cancellation, except when the payment has been returned uncollected, a copy of the notice of cancellation together with a statement certifying that:

(i) The premium finance agreement contains a valid power of attorney as provided in Paragraph (1) of this Subsection.

(ii) The premium finance agreement is in default and the default has not been timely cured.

(iii) Upon default, a notice of cancellation was sent to the insured as provided in Paragraph (2) of this Subsection, specifying the date of sending by the premium finance company to the insured.

(iv) Copies of the notice of cancellation were sent to all persons shown by the premium finance agreement to have an interest in any loss which may occur thereunder, specifying the names and addresses of any governmental agencies, holders of a security interest in the insured property, or third parties to whom the insurance premium finance company has sent notice of cancellation.

(b)(i) Upon receipt of such notice of cancellation and statement from the premium finance company, the insurer shall consider that cancellation of the insurance contract or contracts has been requested by the insured

6

but without requiring the return of the insurance contract or contracts and the insurer may proceed to cancel such contract or contracts as provided in R.S. 22:885. **The effective date of cancellation shall be as of 12:01 a.m. on the tenth day after the date of sending of the notice of cancellation as shown in said statement furnished to the insurer by the premium finance company.**
(ii) **The time period between the date of the late notice and notice of cancellation was sent shall commence upon the date the late notice is sent.**
(emphasis added.)

The financing agreement included a power of attorney signed by Nicholas authorizing APAC to cancel the policy upon default. La. R.S. 9:3550 G(1). La. R.S. 9:3550 G(2) mandates, that upon default, the premium finance company shall mail or send an electronic notice of cancellation to the insured at his last known mailing or electronic address." Nicholas's first installment was due on March 23, 2017, and became in default on March 24, 2017, the date APAC emailed the ten-day notice to her. The notice clearly stated that the policy would be cancelled at 12:01 a.m. on April 3, 2017. Thus, at one minute after midnight on April 3, 2017, the policy was cancelled. Nicholas did not make a timely payment, and as of the date of the accident in question, had never made a payment on the underlying policy.

After receiving no response to the cancellation notice, APAC requested that Go Auto cancel the policy of insurance. La. R.S. 9:3550 G 3(a).

Plaintiffs' only argument is that the ten-day time period did not run at the time the policy was cancelled. La. R.S. 9:3550 G 3(b)(ii) sets forth that the "time period between the date of the late notice and notice of cancellation was sent shall

7

commence upon the date the late notice is sent." The cancellation notice was sent on March 24, 2017 and was cancelled on April 3, 2017. Accordingly, the policy was properly cancelled at 12:01 a.m. on April 3, 2017. As of the date of the accident, June 21, 2017, the policy was not reinstated.

Accordingly, we find no error in the trial court's grant of summary judgment in favor of Go Auto, dismissing plaintiffs' claims, with prejudice. We affirm the ruling of the trial court.

**AFFIRMED**