Judgment rendered August 27, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,424-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

HAYWARD E. SIMONTON AND                    Plaintiffs-Appellants
JENNIFER L. SIMONTON

versus

SHELTER MUTUAL INSURANCE                    Defendant-Appellee
COMPANY

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2023-3378

Honorable Clarence Wendell Manning, Judge

* * * * *

WATSON, MCMILLIN & STREET, LLP              Counsel for Appellants
By: David Carlton McMillin

DAVENPORT, FILES & KELLY, LLP               Counsel for Appellee
By: Martin Shane Craighead

* * * * *

Before STONE, COX, and ROBINSON, JJ.

**ROBINSON, J.**

Hayward Simonton and Jennifer Simonton (together "the Simontons") appeal a judgment granting Shelter Mutual Insurance Company's ("Shelter") motion for summary judgment concerning the application of a drainage system endorsement in their home insurance policy.

For the following reasons, we reverse the judgment and remand this matter to the trial court.

## FACTS

The Simontons own a home in Monroe, Louisiana that was damaged on September 13, 2022, when a toilet overflowed because a faulty fill valve allowed a continuous flow of water down the toilet. A partial blockage in or near the toilet prevented the water from draining as quickly as normal.

On September 16, 2022, a plumber, David Throckmorton, examined the toilet and confirmed that the fill valve on the toilet would not shut off completely. Throckmorton also confirmed that the toilet drained slowly because of a partial stoppage.

The Simontons' home was insured by Shelter at the time. The policy contains a drainage system endorsement with a damages limit of $10,000. The endorsement reads, "Up to the limit of this coverage stated in the **Declarations**, **we** cover **accidental direct physical loss** that directly results from the failure of a **drainage system**, except those losses expressly excluded." The endorsement defines a drainage system as: "[A] man-made system, on the **residence premises**, designed to collect and remove water and water borne contaminants and materials from the **residence premises**. It includes pumps, but does not include roofs and downspouts from roofs."

The policy declarations page states, "The Drainage System Endorsement limit is an aggregate limit for all losses from one occurrence irrespective of the number of coverages that apply."

Contending that the drainage endorsement applied, Shelter tendered $10,000 to the Simontons and declared that its coverage obligation had been fulfilled.

On September 13, 2023, the Simontons filed suit against Shelter. They alleged that an adjuster sent by Shelter to inspect the damage assumed that it was caused solely by the partial blockage in the sewer line. According to the petition, the adjuster did not examine the malfunctioning fill valve or conduct any testing to see if the sewer line could handle the normal flow of water even with the partial blockage.

The Simontons also alleged that their home sustained damages of over $33,000. They had submitted to Shelter a report from Throckmorton that the water damage was caused by a broken fill valve on the toilet.

The Simontons contended that Shelter's decision to not fully satisfy their claim was arbitrary, capricious, and without probable cause, and entitled them to penalties and attorney fees.

On July 11, 2024, Shelter filed a motion for summary judgment. Shelter argued that the toilet, its component parts, and the sewer line constituted a "drainage system" as defined in the endorsement. Shelter contended that it had fulfilled its obligations under the policy and that the Simontons' lawsuit should be dismissed.

Submitted in support of the motion were a copy of the Shelter policy, excerpts from Throckmorton's deposition, and the petition for damages.

Throckmorton testified that the stoppage was in the toilet itself or very close to it because he was able to clear it with a closet auger, which has a cable measuring six feet in length. He added that in his opinion, the stoppage was in the toilet itself. Throckmorton agreed when asked if the toilet and its component parts were manmade pieces of equipment and if the toilet and the sewage line formed a system designed for the purpose of removing waterborne contaminants from the house.

The Simontons argued in opposition to the motion that the definition of a "drainage system" in the endorsement was contrary to Louisiana law and public policy. They maintained that the term "drainage system" is a plumbing term of art. In 2016, Louisiana adopted the International Plumbing Code ("IPC") as part of the State Uniform Construction Code.[1] The IPC contains definitions of "drainage system," "plumbing system," and "plumbing fixtures." The Simontons argued that the IPC defines a toilet as a plumbing fixture, which is not included as part of a drainage system as it disposes of wastewater into a drainage system.

Attached to their opposition were affidavits from Hayward Simonton, licensed mechanical plumber David Shively, and Throckmorton, who is a licensed journeyman plumber.

Shively stated that, in his opinion, the damage to the home stemmed from a malfunction of the fill valve in the toilet, which is a plumbing fixture and part of the plumbing system. He added that the toilet is not part of the drainage system, but that it discharges waste into the property's drainage

---

[1] *See* La. R.S. 40:1730.28.

system.  Thus, according to Shively, the damage did not occur because of a malfunction of or in the drainage system of the property.

The definitions chapter from the IPC was attached to Shively's affidavit.  The chapter contained the following relevant definitions:

> **DRAINAGE SYSTEM**: Piping within a *public* or *private* premise that conveys sewage, rainwater or other liquid waste to a point of disposal.  A drainage system does not include the mains of a *public* sewer system or a private or public sewage treatment or disposal plant.
>
> **PLUMBING FIXTURE**. A receptacle or device that is connected to a water supply system or discharges to a drainage system or both.  Such receptacles or devices require a supply of water; or discharge liquid waste or liquid-borne solid waste; or require a supply of water and discharge waste to a drainage system.
>
> **PLUMBING SYSTEM**. A system that includes the water distribution pipes; plumbing fixtures and traps; water-treating or water-using equipment; soil, waste and vent pipes; and *building drains*; in addition to their respective connections, devices and appurtenances within a structure or premises; and the water service, *building sewer* and building storm *sewer* serving such structure or premises.

Throckmorton stated that he did not read and sign his deposition, and that he needed to clarify his affirmative answer to the deposition question of if he agreed that "the commode and the sewage line is a system designed for purposes of removing waterborne contaminants, mainly human waste, from the house[.]"  He stated that a toilet, which is a plumbing fixture, and a property's drainage system are components of the plumbing system.  He noted that the plumbing definitions that he used for drainage system, plumbing fixture, and plumbing system are derived from the IPC, which is used in the plumbing profession in Louisiana.

Throckmorton stated that the toilet and the sewage line at the Simontons' residence were part of the plumbing system, but he does not

4

consider the toilet to be part of the drainage system for the residence under the terminology used by plumbers. Throckmorton's deposition and the definitions chapter from the IPC were attached as exhibits to his affidavit.

Throckmorton explained in his deposition that if the toilet had not been partially clogged, then the toilet would not have overflowed even with the fill valve not working properly.

Hayward Simonton stated in his affidavit that they had incurred restoration costs exceeding $33,000 through the date that their lawsuit was filed.

Following a hearing, the trial court found that the endorsement language was clear and unambiguous. It rendered judgment granting the motion for summary judgment and dismissing the Simontons' claims.

## DISCUSSION

The Simontons argue on appeal that the water damage occurred because of a malfunctioning fill valve in the toilet, and since the toilet is not part of the drainage system, the endorsement is inapplicable. They contend that the trial court erred in not giving the terms of art in the endorsement their technical meanings.

The Simontons rely on La. C.C. art. 2047, which states:

> The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter.

The Simontons maintain that the technical meanings are provided in the definitions chapter of the IPC, and those definitions show clear differences between a plumbing system, a drainage system, and a plumbing fixture such as a toilet.

5

The Simontons assert that after applying the technical definition to the endorsement term "drainage system," it is likely that the endorsement will be found ambiguous and subject to different interpretations, which would permit the examination of extrinsic evidence to determine the true intent of the parties.

Shelter counters that the language of the drainage system endorsement, including the agreed-upon definition of "drainage system" found in it, is clear and unambiguous. Thus, there is no need to delete the clear language and substitute extrinsic language from the IPC. Shelter also argues that while the Simontons rely on La. C.C. art. 2047, they ignore La. C.C. art. 2046, which states, "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." In Shelter's view, the trial court was correct in not reaching art. 2047 in its analysis when the definition of "drainage system" in the endorsement was clear, explicit, and did not lead to absurd consequences.

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by La. C.C.P. art. 969; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

6

A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880.

Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment. *Landry v. Progressive Sec. Ins. Co.*, 21-00621 (La. 1/28/22), 347 So. 3d 712; *United Home Care, Inc. v. Simpson*, 54,797 (La. App. 2 Cir. 11/16/22), 351 So. 3d 904, *writ denied*, 22-01831 (La. 3/28/23), 358 So. 3d 518.

An insurer seeking to avoid coverage through summary judgment bears the burden of proving some provision or exclusion applies to preclude coverage. *Beck v. Burgueno*, 43,557 (La. App. 2 Cir. 9/17/08), 996 So. 2d 404.

Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So. 2d 1180; *Kansas City Southern Railway Company v. Wood Energy Group, Inc.*, 53,096 (La. App. 2 Cir. 1/15/20), 289 So. 3d 671.

In *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054 (La. 5/22/07), pp. 7-10, 956 So. 2d 583, 588-590, the Louisiana Supreme Court provided certain principles to be used when interpreting insurance policies:

In analyzing insurance policies, certain elementary legal principles apply. First and foremost is the rule that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code.

According to those rules, the responsibility of the judiciary in interpreting insurance contracts is to determine the parties' common intent. Courts begin their analysis of the parties' common intent by examining the words of the insurance contract itself. ("[T]he initial determination of the parties' intent is found in the insurance policy itself."). In ascertaining the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning.

An insurance contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. Neither should an insurance policy be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.

When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent.

Nevertheless, if, after applying the general rules of contractual interpretation to an insurance contract, an ambiguity remains, the ambiguous contractual provision is generally construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. This strict construction principle applies, however, only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two

> or more interpretations, but each of the alternative interpretations must be reasonable.
>
> The determination of whether a contract is clear or ambiguous is a question of law.  Moreover, when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate.

Citations omitted.

When these principles for contract interpretation are considered, our review of the endorsement at issue leaves us with the inescapable conclusion that the endorsement language is anything but clear and unambiguous that the endorsement's definition of "drainage system" includes a toilet.  The definition is that it is a "man-made system, on the residence premises, designed to <u>collect and remove</u> water and water borne contaminants and materials from the residence premises."  Emphasis added.  Merriam-Webster Dictionary defines "collect" as "to bring together into one body or place."  A toilet does not "collect" water or water borne contaminants and materials as that word is generally understood.  Rather, the sewer line collects such from the toilet when it is flushed.

Moreover, even if it can be construed that a toilet collects water and water borne contaminants and materials because a toilet holds water, the part of toilet that malfunctioned, the fill valve, does not do so.  The fill valve merely regulates the flow of water into the toilet's water tank.

In support of its motion, Shelter noted that Throckmorton agreed that a toilet and a sewage line form a "system designed for the purpose of removing waterborne contaminants, mainly human waste, from the house."

9

While that language closely tracks the definition of "drainage system" in the endorsement, it omits the critical word "collect."

Finally, we note that it is not clear from the record whether the blockage was in the toilet or the sewer line. Throckmorton, who used a short auger to clear the stoppage, believed the stoppage was in the toilet itself.

## CONCLUSION

For the foregoing reasons, we conclude that Shelter's motion for summary judgment was granted in error. Accordingly, we reverse the judgment and remand for further proceedings. Shelter is to pay the costs of this appeal.

**REVERSED and REMANDED**.