Judgment rendered December 17, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,722-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

TONYA PARROTT, INDIVIDUALLY              Plaintiffs-Appellants
AND ON BEHALF OF HER MINOR
DAUGHTER, ISRAEL JADON
PARROTT

versus

PELICAN PORT-A-BUILDINGS,                Defendants-Appellees
LLC; DANIEL EDWARD MASSEY,
AND PROGRESSIVE INSURANCE
CO.

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 20222882

Honorable Bernard Scott Leehy, Judge

* * * * *

TONYA PARROTT                            In Proper Person,
                                         individually and on behalf
                                         of her minor daughter,
                                         Israel Jadon Parrott

JONES WALKER, LLP                        Counsel for Appellees,
By: Ian Alexander McDonald               Pelican Port-A-Buildings,
    Trey K. Bartholomew                  LLC, Daniel Edward
                                         Massey

STRAUSS, MASSEY, DINNEEN, LLC            Counsel for Appellee,
By: Richard Daniel Serio, Jr.            United Financial Casualty
                                         Company

* * * * *

Before THOMPSON, ROBINSON, and HUNTER, JJ.

**ROBINSON, J.**

Tonya Parrott appeals a judgment granting a motion for summary judgment and dismissing United Financial Casualty Company (improperly referred to as "Progressive Insurance Company" in her petition) from her lawsuit. For the following reasons, we affirm the judgment.

**FACTS**

Parrott hired Daniel Massey's business, Pelican Port-a-Buildings, LLC ("Pelican"), to move her mobile home in Ouachita Parish. Pelican began dismantling the home on August 31, 2021, and moved it a few days later. She alleged that Massey and Pelican severely damaged her home during the move.

A red 2011 Ford F-350 was used to tow her home. According to Parrott, the truck's license plate number was Z232252, and the DOT number 3612408 was written on the driver's door along with business information.

Progressive Insurance had issued an Arkansas commercial auto insurance policy to Pelican. The policy number was 03950178-0, and the relevant policy period was from August 11, 2021, to August 11, 2022. The policy was underwritten by United Financial Casualty Company ("United"). The listed vehicles on the declarations page were a 1998 Peterbilt 379 and a 2006 RNR trailer.

On August 19, 2022, Parrott filed suit on her own behalf and on behalf of her minor daughter against Pelican, Massey, and Progressive. She alleged that Pelican severely damaged her home during the move and made it uninhabitable. In particular, she alleged that Pelican bent the home's frame, never reassembled the home, left the home exposed to the

elements, and placed the home in an unauthorized location. She also alleged that Pelican breached its contract with her, and that Pelican engaged in unfair trade practices. Parrott was represented by Walter McClatchey, Jr. of Acadiana Legal Services Corporation when the suit was filed. Parrott later amended her petition to allege additional damages and to allege that United had denied coverage and refused to provide her with a copy of the policy.

On November 13, 2013, United filed a motion for summary judgment in which it asserted that Pelican and Massey operated a 2011 Ford F-350 truck during the transport of Parrott's home. United argued that its policy provided no coverage for Parrott's alleged damages because the truck, which had the VIN 1FDRF3H62BEC41768 and was insured under a policy issued by Louisiana Farm Bureau at the time of the move, did not meet any definition of "insured auto" under the policy. United's motion for summary judgment was refiled on December 7, 2023, because of a clerical error in an attachment.

The United policy issued to Pelican provided under "PART I-LIABILITY TO OTHERS":

> Subject to the Limits of Liability, if you pay the premium for liability coverage for the insured auto involved, we will pay damages, other than punitive or exemplary damages, for bodily injury, property damage, and covered pollution cost or expense for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance or use of that insured auto.

Under the general definitions section of the policy, an "insured auto" was defined as:

a. Any auto specifically described on the declarations page; or

b. An additional auto for Part I-Liability To Others and/or Part II-Damage To Your Auto on the date you become the owner if:

(i) you acquire the auto during the policy period shown on the declarations page;

(ii) we insure all autos owned by you that are used in your business;

(iii) no other insurance policy provides coverage for that auto; and

(iv) you tell us within 30 days after you acquire it that you want us to cover it for that coverage.

. . . . .

c. Any replacement auto on the date you become the owner if:

(i) you acquire the auto during the policy period shown on the declarations page;

(ii) the auto that you acquire replaces one specifically described on the declarations page due to termination of your ownership of the replaced auto or due to mechanical breakdown of, deterioration of, or loss to the replaced auto that renders it permanently inoperable; and

(iii) no other insurance policy provides coverage for that auto.

United also noted that there is a definition of "insured auto" used only in Part I of the Policy. It states that when used in Part I-Liability to Others, "insured auto" also includes:

1. Trailers designed primarily for travel on public roads, while connected to your insured auto that is a power unit;

2. Mobile equipment while being carried or towed by an insured auto;

3. Any temporary substitute auto; and

4. Mobile equipment that is:

a. owned by you;

b. leased, hired, or borrowed by you and you have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from us; or

c. not owned, leased, hired, or borrowed by you and you have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from us.

However, mobile equipment meeting any of those three criteria will qualify only if at the time of loss it is being:

a. used in your business;

b. operated on a public highway; and

c. operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

A "temporary substitute auto" is defined in the policy as "any auto you do not own while used with the permission of its owner as a temporary substitute for an insured auto that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction."

The policy contained a motor truck cargo legal liability coverage endorsement. It stated that "insured auto" meant:

> a. Any auto specifically described on the declarations page that is not a trailer;
> b. An additional auto that is not a trailer on the date you become the owner if:
> (i) you acquire the auto during the policy period shown on the declarations page;
> (ii) we insure all autos owned by you that are used in your business;
> (iii) no other insurance policy provides coverage for that auto; and
> (iv) you tell us within 30 days after you acquire it that you want us to cover it;
> c. Any replacement auto that is not a trailer on the date you become the owner if:
> (i) you acquire the auto during the policy period shown on the declarations page;
> (ii) the auto that you acquire replaces one specifically described on the declarations page due to termination of your ownership of the replaced auto or due to mechanical breakdown of, deterioration of, or loss to the replaced auto that renders it permanently inoperable;
> (iii) no other insurance policy provides coverage for that auto; and
> (iv) you tell us within 30 days after you acquire it that you want us to cover it;
> d. A trailer designed primarily for travel on public roads, only when the trailer is attached to a power unit that is an insured auto or while it is in due course of transit by a power unit that is an insured auto; and
> e. Any temporary substitute auto that is not a trailer.

Submitted in support of the motion for summary judgment were: (1) Parrott's petition for damages; (2) Farm Bureau's certificate of insurance; (3) a July 26, 2021, letter from Farm Bureau to Massey; (4) the United policy; and (5) an affidavit from Roy Meyers, a claims adjuster with United.

4

Farm Bureau issued a policy to Massey d/b/a Pelican Portable Building LLC covering the 2011 Ford F-350 truck with a VIN of 1FDRF3H62BEC41768. The effective date of the policy was November 9, 2020. The letter from Farm Bureau to Massey showed that the 2011 Ford F-350 had been insured by Farm Bureau since July 18, 2018.

Meyers stated in his affidavit that he adjusted Parrott's claim, which she reported on October 6, 2021. Pelican and Massey used the 2011 F-350 to transport Parrott's mobile home, but there was no bill of lading. Massey has had the 2011 F-350 since at least July 2018, and it was listed as an insured vehicle under Massey's Farm Bureau policy in effect at the time of the incident. On December 4, 2021, United advised Parrott that the United policy did not provide coverage because the 2011 F-350 was not an insured vehicle under its terms. The policy included a motor truck cargo legal liability coverage endorsement. Attached to Meyers' affidavit was a motor vehicle report showing that as of February 15, 2023, the 2011 F-350 was registered to Ideal Portable Buildings LLC. It also showed the 2011 F-350 was registered to Massey as of December 15, 2020.

On November 21, 2023, Parrott's attorney filed a motion to withdraw as counsel of record. On June 25, 2024, the trial court permitted McClatchey and Acadiana Legal Service Corporation to withdraw as counsel of record. Proceedings were stayed for 90 days to allow Parrott to obtain other counsel. Parrott did not obtain counsel and has appeared *pro se* since.

On February 18, 2025, United filed a motion to reset the hearing on its motion for summary judgment. It was reset for April 24, 2025.

On March 10, 2025, Parrott filed a motion to continue the summary judgment hearing. She stated that on February 25, 2025, she issued a subpoena to the Louisiana administrator for the Federal Motor Carrier Safety Administration ("FMCSA") to obtain documentation as to whether the F-350 was insured at the time of the incident. The subpoena was processed as a Freedom of Information Act ("FOIA") request. She was advised in a March 3, 2025, letter from the FMCSA that it may take up to five months for her to receive a response. The motion for a continuance was set for hearing on April 24, 2025.

On March 25, 2025, Parrott filed a motion to compel production of United's policy CA3950178. She claimed the FMCSA website showed United as providing liability coverage to Pelican through that policy number.

On April 9, 2025, Parrott filed her opposition to the motion for summary judgment. She argued that United denied coverage for a F-350 that was not the F-350 that moved her home. She asserted that the F-350 which moved her home had the DOT number 3612408 on its driver's door and the license plate number Z232252. She maintained that the F-350 for which United denied coverage also used the same license plate number but had the DOT number 7292429 issued to it.

Submitted by Parrott in opposition to the motion for summary judgment were: (1) Parrott's affidavit; (2) an annual oversize/overweight heavy equipment permit from DOTD; (3) a claim made by Daniel Massey against United; (4) Pelican's contract with Parrott; (5) the declarations page for the United policy; (5) a FMCSA acceptance report; and (6) the March 3, 2025, letter concerning the FOIA request.

6

Parrott stated in her affidavit that the red F-350 which moved her home had the DOT 3612408 number on its side, the license plate number Z232252, and a metal bar across the hood. When she went to Pelican's place of business on June 26, 2024, she saw a very similar looking red F-350 which did not have a metal bar or any lettering on it. That truck had the VIN 1FDRF3H62BEC41768 and the license plate Z232252. Photos of the trucks taken in 2021 and 2024 were attached to her affidavit.

The DOTD permit was for a 2011 Ford truck with the VIN 1FDRF3H62BEC41768 and the license plate number Z232252. It was issued to Pelican from December 24, 2020, to December 23, 2021. It listed a DOT number of 007292429, which was different from the DOT number on the side of the truck as well as the number listed in Pelican's contract with Parrott.

The claim made by Massey against United lists an incident date of September 4, 2021. Massey's date of birth is listed as January 1, 2001, which Parrott asserts could not be the birthdate of the Massey from Pelican.

The FMSCA acceptance report listed United as the insurer for Pelican. The policy number was CA3950178, with an effective date of August 11, 2021. That policy was the object of Parrott's motion to compel.

United filed an opposition to the motion to compel. It argued that the motion was moot since it had already provided the policy to Parrott. United asserted that it had repeatedly informed Parrott that policy 03950178-0 is the same policy as CA3950178. The "CA" means commercial auto, and the "-0" means it's the first issuance of the policy.

At the hearing on the motions, the court denied the motion to compel, granted the motion for summary judgment, and dismissed United, improperly referred to as "Progressive Insurance Company," from the lawsuit.

Parrott has appealed.

## DISCUSSION

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880.

Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment. *Landry v. Progressive Sec. Ins. Co.*, 21-00621 (La. 1/28/22), 347 So. 3d 712; *United Home Care, Inc. v. Simpson*, 54,797 (La. App. 2 Cir. 11/16/22), 351 So. 3d 904, *writ denied*, 22-01831 (La. 3/28/23), 358 So. 3d 518.

8

When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. *Jumper v. State Farm Mutual Automobile Insurance Company*, 54,184 (La. App. 2 Cir. 3/9/22), 335 So. 3d 1001. An insurer seeking to avoid coverage through summary judgment bears the burden of proving some provision or exclusion applies to preclude coverage. *Beck v. Burgueno*, 43,557 (La. App. 2 Cir. 9/17/08), 996 So. 2d 404.

Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So. 2d 1180; *Kansas City Southern Railway Company v. Wood Energy Group, Inc.*, 53,096 (La. App. 2 Cir. 1/15/20), 289 So. 3d 671.

### *Federal law*

Parrott first argues that the trial court erred in finding that there was no genuine issue of material fact as to whether federal law required United to provide insurance to Pelican covering the vehicle that damaged her home. In support of her argument, Parrott cites federal provisions, including 49 U.S.C. §13902, 49 U.S.C. §13906, 49 U.S.C. §31134, 49 U.S.C. §31139, 49 C.F.R. §365.107, 49 C.F.R. §365.109, and 49 C.F.R. §387.7.

This is the first time that Parrott has raised this argument. Normally, an argument raised for the first time on appeal will not be considered. *Segura v. Frank*, 93-1271 (La. 1/14/94), 630 So. 2d 714; *Kelley v. Kelley*, 55,879 (La. App. 2 Cir. 10/2/24), 400 So. 3d 1129. However, even if this

9

court were to consider the argument, there is no merit to it. The cited provisions refer to responsibilities of Pelican, not United.

***Motion to compel***

Parrott contends that the trial court erred in denying her motion to compel and then granting summary judgment despite her outstanding FOIA request.

In her motion to compel, Parrot sought United policy CA3950178, which United asserts is the same policy as 03950178-0 that has been provided to her. The "CA" merely refers to "Commercial Auto." The policy issued by United to Pelican was a commercial policy.

The mere contention of an opponent that he lacks sufficient information to defend the motion for summary judgment and needs additional time to conduct discovery is insufficient to defeat the motion. *Dean v. State Farm Mut. Auto. Ins. Co.*, 51,243 (La. App. 2 Cir. 4/5/17), 217 So. 3d 611. The district court has the discretion to render a summary judgment or to require further discovery. *Id*.

The motion for summary judgment had been pending for well over a year, with much of the delay attributed to the motion to withdraw. The trial court did not abuse its discretion in denying the motion to compel, denying a continuance, and in ruling on the motion for summary judgment. Summary judgment was not premature.

***Summary judgment***

Parrott maintains that the trial court erred in determining there were no genuine issues of material fact concerning whether the policy provided coverage to the F-350 that moved her home.

10

The policy is clear and unambiguous that coverage was not provided to the F-350 which moved Parrott's home. It was not an insured auto under any provision of the policy. It was not specifically described on the declarations page. It was not an additional auto or a replacement auto because it was not acquired by Pelican during the policy period and because another insurance policy provided coverage for it. It was not a trailer, mobile equipment being carried or towed by an insured auto, or a temporary substitute auto.

Parrott maintains that Farm Bureau has asserted a policy exclusion because the truck was being used for a commercial purpose. This is of no moment as Farm Bureau provided coverage for the vehicle, just not to an unlimited extent. In any event, the truck was still not an additional or replacement auto as it was not acquired during the policy period.

Parrott also maintains there are discrepancies as to when Pelican acquired the vehicle. She notes that the earliest that Pelican began using the truck was in July of 2018. A motor vehicle report showed that the 2011 F-350 was registered to Massey as of December 15, 2020. That same motor vehicle report showed it was registered to Ideal Portable Buildings on February 15, 2023. However, none of this establishes that the F-350 was acquired during the policy period.

Parrott also asserts that there are two different Daniel Masseys because the Daniel Massey who made the claim against United was too young to be the same Daniel Massey who moved her home. This does not create a genuine issue of material fact as to whether the F-350 was an

insured auto under the policy. We also note that this claim was marked as waived and the matter was closed.

Parrott notes that the Louisiana DOTD permit issued from December 24, 2020, to December 23, 2021, has a different DOT number for the F-350 with license plate number Z232252 and the VIN 1FDRF3H62BEC41768. However, this does not change the fact that no F-350 was listed on the United policy's declarations page or that a F-350 with that VIN was insured by the Farm Bureau policy since 2018.

Finally, Parrott argues that there are two 2011 Ford F-350s, and the one that moved her home was not the one with the VIN 1FDRF3H62BEC41768. Her proof consists of photographs of the vehicles taken three years apart. The latter photographs show no lettering on the F-350. However, she did not establish that the vehicles have different VINs.

**CONCLUSION**

For the foregoing reasons, we conclude that there is no genuine issue of material fact that the 2011 Ford F-350 which moved Parrott's home was not an insured auto under the policy issued by United to Pelican. United's motion for summary judgment was properly granted. Parrott is to pay all appeal costs to the extent allowed by La. C.C.P. art. 5188.

**AFFIRMED.**